UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(CAMDEN VICINAGE)

ROGER C. MATTSON, ESQUIRE
26 Newton Avenue
Woodbury, NJ 08096
(856) 848-4050
Attorney for MICHAEL AND LYNN OGBIN
Plaintiffs

---

| | |
|---|---|
| MICHAEL and LYNN OGBIN<br>Individually and as a class representative<br>On behalf of others similarly situated<br><br>  Plaintiffs<br><br>vs.<br><br>CITIFINANCIAL MORTGAGE<br>COMPANY, INC. f/k/a Ford Consumer<br>Finance Company, Inc.<br><br>Defendant | **CIVIL ACTION**<br><br>CLASS ACTION<br><br>COMPLAINT<br>AND JURY TRIAL DEMAND |

---

Plaintiffs, MICHAEL and LYNN OGBIN, residing at 111 Robins Run East, Swedesboro, New Jersey, individually, and as private attorney general, and on behalf of others similarly situated, by way of Complaint says:

## PARTIES

1. The Plaintiffs, MICHAEL and LYNN OGBIN, owned the residential property located at 111 Robins Run East, Swedesboro, New Jersey.

2.  The Defendant, CITIFINANCIAL MORTGAGE COMPANY, INC. f/k/a Ford Consumer Finance Company (CITI), a New York Corporation with headquarters located at 300 St. Paul Place, Baltimore, MD 21202, solicits and does business throughout the State of New Jersey, inclusive of Gloucester County.

### VENUE AND JURISDICTION

3.  This action is a civil action over which this Court has original jurisdiction pursuant to 28 USC 1332(d), as amended by the Class Action Fairness Act, Pub. L. No. 109-2,119 Stn. 4 (2005). This is a class action in which at least one member of the class of the Plaintiffs is a citizen of a state different from that of the Defendant and the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

4.  Plaintiffs seek to represent a class and pursue a class recovery under              .
See 28 USC 1332(d)(1)(B) (defining "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute...authorizing an action to be brought by 1 or more representative persons as a class action.")

5.  The diversity requirement of Section 1332(d)(2), as amended by the Class Action Fairness Act, is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant" Id. 1332(d)(2)(A).

6.  The Defendant, CITI, is a New York Corporation with headquarters in Maryland.

7.  The Plaintiffs are residents of the State of New Jersey.

2

8.  The proposed class will not be composed of or limited to citizens from the state of New York. The Plaintiffs propose a class as 1) Individuals who have had home loans held or serviced by the Defendant in the State of New Jersey from sixteen years prior to the filing of the complaint through the date of class certification, 2) individuals who received a payoff or reinstatement statement from the Defendant whose home loan was in default, 3) individuals who were charged attorneys fees and/or other costs which were in excess of the amount actually incurred and/or in excess of the amount allowed by law.

9.  A subclass exists for claims from sixteen years prior to the filing of the complaint through the date of class certification which includes claims under the New Jersey Consumer Fraud Act and the New Jersey Truth-In-Consumer Contracts, Warranty and Notice Act.

10. The class damages sought by the Plaintiffs are to be aggregated for purposes of calculating the amount in controversy.  The Plaintiffs will be seeking actual damages, treble damages and punitive damages plus attorneys fees and costs of suit. The Plaintiffs anticipate that the damages will average $5000.00 per class member.

11. The Defendant CITI has averaged 600 to 1000 foreclosures per year since 2002. The class size is anticipated to be in excess of 3000 members. The total aggregated damages would be at least $15,000,000.00.

3

## BACKGROUND

12.   The mortgage and note dated January 11, 1995 executed by the Plaintiffs are documents signed under seal which was originated by Ford Consumer Finance Company a lender licensed under the New Jersey Licensed Lenders Act.

13.   On or about May 15, 2003, the Defendant, CITI filed a foreclosure action.

14.   The Plaintiffs requested a reinstatement and modification of the mortgage.

15.   The Plaintiffs received the reinstatement and modification from the Defendant CITI dated April 21, 2006. Exhibit A.

16.   The parties entered into a loan modification agreement.

17.   The Defendant demanded attorney's fees and costs from the Plaintiffs in the amount of $5,147.00.

18.   The loan was paid in full on or about May 22, 2007 and the mortgage loan was discharged. Exhibit B.

## FACTUAL ALLEGATIONS:
## DEFENDANT'S WRONGFUL CONDUCT

19.   At all times relevant hereto, CITI has engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law.  The components of this scheme involve common tactics in which the Defendant has been

overcharging defaulting borrowers of residential mortgages in the following manner, including but not limited to:

a) they charged attorneys fees and costs in excess of those actually incurred or allowed by law;

b) costs of suit charged to the Plaintiffs and class was excessive in violation of statute and court rule.

c) Failed to credit all of the payments received by the Bankruptcy Trustee.

d) In addition the Plaintiffs contend that the defendant overcharged the class as follows:

  i.   over charging of sheriff's commissions by failing to properly credit deposits;

  ii.  charging excessive late charges by failing to properly credit payments.

## CLASS ACTION ALLEGATIONS

20.  The Plaintiffs repeat each and every previous allegation and incorporate them by reference herein as if they were set forth fully herein.

21.  The Plaintiffs bring this action on behalf of all persons similarly situated and pursuant to Fed. R.Civ.P. 23 as a class action on behalf of a statewide class of persons as defined below.

22.  The claims of the named class representative and the absent class members have a common origin and share a common basis. Their claims originate from the same illegal, fraudulent, unconscionable and/or negligent business practices of the Defendant, and the Defendant acts in the same way

toward the Individual Plaintiffs and the members of the class. As such, the individual Plaintiffs have been victims of the unconscionable business practices.

23. The actions of the Defendant are not isolated but represent a general and consistent business practice.

24. The actions of the Defendant have affected similarly situated individuals throughout the State of New Jersey.

25. The Plaintiffs propose a class as 1) Individuals who have had home loans held or serviced by the Defendant CITI, in the State of New Jersey from sixteen years prior to the filing of the complaint through the date of class certification; and 2) who received a payoff or reinstatement statement from the Defendant whose home loan was in default; 3) and who were charged attorneys fees and/or other costs which were in excess of the amount actually incurred and/or in excess of the amount allowed by law.

    a)    A subclass exists for claims from sixteen years prior to the filing of the complaint through the date of class certification which includes claims under the New Jersey Consumer Fraud Act and New Jersey Truth-In-Consumer Contracts, Warranty and Notice Act.

26. The proposed class representative states a claim upon which relief can be granted that is typical of the claims of absent class members. If brought and prosecuted individually, the claims of each class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

27. The claims and remedial theories pursued by the named class representative are sufficiently aligned with the interests of absent class members to ensure that the individual claims of the class will be prosecuted with diligence and care by the individual Plaintiffs as class representative.

28. The class members are so numerous that joinder of all members is impracticable. It is believed and therefore averred that there are over 750 mortgages within each category of claims identified above and in each Count of this Complaint.

29. The claims of the Plaintiffs are typical of the claims of each of the class members, and the Plaintiffs have no claim antagonistic to class members. They are aware that they cannot settle this action without Court approval. They have and will continue to vigorously pursue the class member claims.

30. The Representative Plaintiffs, MICHAEL AND LYNN OGBIN, will fairly and adequately protect the interests of the class members. The Plaintiffs are committed to the vigorous representation of the class members and has retained competent counsel experienced in the prosecution of complex and class action litigation. Counsel have agreed to advance the costs of the litigation contingent upon the outcome.

31. CITI has all acted on grounds generally applicable to the class members, thereby justifying relief against Defendant, CITI for the class members as whole.

32. A class action is superior to other methods for the fair and efficient adjudication of this controversy because prosecution of separate actions by

mortgagors creates a high risk of inconsistent and varying adjudications, with inconsistent and varying results.  Furthermore, as the damages suffered by many individual class members may be relatively small in relation to the costs of litigation, the expense and burden of individual litigation make it difficult, if not impossible, for class members to individually redress the wrongs done to them.  Many, if not most, of the class members are unaware that claims exist against CIT1. There will be no unusual difficulty in the management of this class action.

33.   The named Individual Plaintiffs are willing and prepared to serve the Court and proposed class in a representative capacity with all of the obligations and duties material thereto. The individual Plaintiffs will fairly and adequately protect the interests of the class and have no interests adverse to, or which directly and irrevocably conflict with, the interests of the other class members.

34.   The self-interest of the named class representatives are co-extensive with and not antagonistic to those of the absent class members. The proposed representatives will undertake to well and truly protect the interests of the absent class members.

35.   Questions of fact and law common to the class that predominate include but are not limited to:

      I.     Did CIT1 breach their contractual obligations to the class members by having imposed or collected amounts that are not due and

owing by contract or applicable law including interest, default related fees, costs, attorney's fees and charges?

II.    Did CITI engage in unfair and/or deceptive acts and practices with respect to each Class member that includes one or more of the following:

    a.    Imposing and collecting unnecessary and excessive fees and charges not authorized by the loan documents or by applicable law;

    b.    Imposing and collecting excessive interest;

    c.    Misleading or otherwise misinforming class members about the amounts properly due and owing;

    d.    Engaging in conduct that violates state and federal consumer protection laws; and

    e.    Harassing or otherwise treating class members unfairly and without regard to obligations of good faith and fair dealing.

III.    Did CITI engage in unfair and/or deceptive acts and practices in violation of the New Jersey Consumer Fraud Act with respect to each Class member that includes one or more of the following:

    a.    Imposing and collecting unnecessary and excessive fees and charges not authorized by the loan documents or by applicable law;

    b.    Imposing and collecting excessive interest;

c.     Misleading or otherwise misinforming customers about the amounts properly due and owing;

d.     Engaging in conduct that violates state and federal consumer protection laws; and

e.     Harassing or otherwise treating class members unfairly and without regard to obligations of good faith and fair dealing.

IV.    Did CITI represent to the Plaintiffs that they are entitled to collect various loan charges that were not legally due and owing?

V.    Did CITI collect monies that are not due and owing under applicable law which resulted in unjust enrichment of the Defendant CITI?

## COUNT ONE

## BREACH OF CONTRACT - CITI

36.     Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact as if they were set forth fully herein.

37.     Defendant's, CITI loans are evidenced by standard form notes and mortgages, the relevant provisions of which are uniform.

38.     CITI has imposed or collected amounts that are not due and owing by contract or applicable law including interest, default related fees, costs of suit, attorneys fees and other charges.

39.     CITI failed to disclose in advance to the Plaintiffs the amount of any fees or costs which may be charged to them in connection with their mortgage.

40.     CITI has breached their contracts with Plaintiffs and members of the class. Specifically, the note and mortgage only allow CITI and to be reimbursed for actual expenses incurred. The note and mortgage make no provision for CITI to receive any money in excess of the amount actually incurred.

41.     Plaintiffs and Class members are entitled to relief for breach of contract.

## COUNT II

## NEGLIGENCE- CITI

42.     Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact as if they were set forth fully herein.

43. CITI owed Plaintiffs and other Class members a duty of care with respect to servicing their mortgage loans since those loans were secured by an interest in each homeowners' family residence and that lack of care would result in overpayments causing great hardship to Plaintiffs and members of the class.

44. CITI'S conduct with respect to Plaintiffs and other Class members was far below applicable standards for mortgage loan servicing.

45. CITI'S conduct was negligent with respect to Plaintiffs and other Class members.

46. As a direct and proximate result of the negligence listed above Plaintiffs and the other Class members have suffered damages and are entitled to relief for CITI'S negligence.

## COUNT III

### BREACH OF DUTY OF GOOD FAITH

### AND FAIR DEALING - CITI

47. Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact as if they were set forth fully herein.

48. New Jersey recognizes a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations.

49. CITI'S conduct as aforesaid breached said duty.

50. Plaintiffs and members of the Class are entitled to relief for CITI.

## COUNT IV

### UNJUST ENRICHMENT - CITI

51.    Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact as if they were set forth fully herein.

52.    CITI has engaged in unlawful collection activities.

53.    CITI has collected monies that are not due and owing under applicable contract law, because the contract or other applicable law does not permit CITI to collect such fees and charges.

54.    Said conduct sounds in equity under the common law of unjust enrichment, money had & received, and constructive trust.

55.    CITI has been unjustly enriched by their conduct.

56.    Plaintiffs and Class members have suffered loss by virtue of CITI'S conduct.

57.    Plaintiffs and members of the Class are entitled to relief for unjust enrichment.

## COUNT V

### UNFAIR AND DECEPTIVE ASSESSMENT AND COLLECTION OF FEES

### CITI

58.    Plaintiffs incorporate by reference all the foregoing paragraphs.

59.    In the course and conduct of their loan servicing and collection, Defendant in numerous instances, have represented, expressly or by implication, that fees assessed and collected by CITI, were (a) allowed under, the mortgage contract and (b) permitted by law.

60.   On numerous occasions, the fees assessed and collected by CITI were (a) not allowed under the mortgage contract or (b) not permitted by law. Nonetheless, CITI improperly assessed and collected these fees.

61.   The actions of Defendant have caused and are likely to cause substantial injury to class members. This injury is not reasonably avoidable by class members and not outweighed by countervailing benefits to class members or competition.

62.   The acts or practices of Defendant constitute unfair and deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. §45(a) which constitutes a violation of the New Jersey Consumer Fraud Act and are therefore actionable by the Plaintiffs.

## COUNT VI

### FAIR FORECLOSURE ACT – CITI

63.   The Plaintiffs repeat each and every allegation of the previous paragraphs and incorporate them by reference herein as if they were set forth fully herein.

64.   N.J.S.A. 2A:50-57 (b)(3) prohibits the charging of attorneys fees and costs in excess of those allowed by the New Jersey court rules.

65.   The charges for costs and attorneys fees of the Defendant were in excess of the amount allowed pursuant to the statute and court rule R 4:42-9(a)(4).

66.     These actions constitute unconscionable business practices under the New Jersey Consumer Fraud Act which provides for a specific relief.

67.     The Plaintiffs demand a return of the excess charges.


## COUNT VII

### NEW JERSEY STATE COURT RULE - CITI

68.     The Plaintiffs repeat each and every allegation of the previous count and incorporate them by reference herein.

69.     The Defendant's charges for costs and attorneys fees of the Defendant were in excess of the amount allowed by the  New Jersey court rules including but not limited to R 4:42-9(a)(4) and R 4:42-10 (a).

70.     These actions constitute unconscionable business practices under the New Jersey Consumer Fraud Act which provides for specific relief.

71.     The Plaintiffs request the return of the excess charges with interest.


## COUNT VIII

### NEW JERSEY CONSUMER FRAUD ACT - CITI

72.     The Plaintiffs repeat each and every allegation of the previous counts and incorporate them by reference herein as if they were set forth fully herein.

73.     The Defendant CITI has charged the illegal and/or excessive charges as outlined previously. The previously outlined actions by the Defendant, CITI are violations of rules, regulations and statutes for which the Defendant is strictly liable under the Act.

74.     The Plaintiffs haves suffered an ascertainable loss of at least $4000

calculated based on the following overcharges: $4000 for attorneys fees; as the

other charges were not itemized it is likely there are other charges as well.

75.     The actions of the Defendant constitute unconscionable business

practices in violation of the New Jersey Consumer Fraud Act.  N.J.S.A. 56:8-2

et .seq.

**COUNT IX**

**TRUTH-IN-CONSUMER CONTRACT,**

**WARRANTY AND NOTICE ACT - CITI**

76.     The Plaintiffs repeat each and every allegation of the previous counts

and incorporate them by reference herein as if they were set forth fully herein.

77.     The Defendant, CITI's, notice included illegal and/or excessive charges

on the loan; specifically by charging excessive costs of suit, excessive attorneys

fees, and illegal late charges as outlined previously.

78.     The notice which demanded such illegal payments is a violation of the

Truth-In-Consumer Contracts, Warranty and Notice Act.  N.J.S.A. 56:12-14

79.     The Plaintiffs have been injured as a direct and proximate result of the

Defendant's actions.

**COUNT X**

**LICENSED LENDERS ACT –CITI**

80.  The Plaintiff repeats each and every allegation of the previous counts

and incorporates them by reference herein as if they were set forth fully herein.

16

81. Ford Consumer Finance Company, Inc at the time the loan was made was a lender licensed pursuant to the New Jersey Licensed Lenders Act.

82. CITI as the successor to Ford is subject to the rules and regulations of the New Jersey Licensed Lenders Act.

83. The Defendant has charged illegal and/or excessive charges on the loan; specifically by charging excessive costs of suit, excessive attorneys fees, and illegal late charges as outlined previously.

84. NJSA 17:11C-28(a) provides that upon the charging of any illegal charges; all interest and other charges upon the loan are forfeited and only the principle may be collected.

85. The Plaintiff demands a return of all interest and other charges paid on the mortgage pursuant to NJSA 17:11C-28(a).

## COUNT XI

### JOHN DOE PARTIES

86.   In addition to the persons named as Defendant, there may be others whose names are unknown to the Plaintiffs and/or after diligent inquiry has not been able to ascertain. They are made parties to this action under the designation of John Does.

87.   John Doe Servicer 1-100 are the unknown servicers of mortgages held by the Defendant CITI.

88.   John Doe Law Firm 1-100 are the unknown law firms which have represented, CITI, or any of its Servicers.

## PRAYER FOR RELIEF

Wherefore Plaintiffs request that this court certify a class and award:

1.  Actual, special, and general damages according to proof;

2.  Statutory damages and penalties;

3.  Restitution and disgorgement according to proof;

4.  Injunctive relief against Defendant's CITI to ensure uniform standards of servicing conduct towards all class members and to prevent future wrongful conduct;

5.  Prejudgment interest at the maximum legal rate;

6.  Punitive, exemplary and enhanced damages according to proof;

7.  Statutory punitive treble damages;

8.  An accounting;

9.  Declaratory Judgment as necessary to correct the wrongs inflicted on them;

10.  Litigation Expenses and Costs of the proceedings herein;

11.  Reasonable attorneys' fees; and

12.  All such other further relief as the Court deems just.


## DESIGNATION OF TRIAL COUNSEL

The undersigned, Roger C. Mattson, Esq., and Lewis G. Adler, Esq. are designated as trial counsel.

## DEMAND FOR JURY TRIAL

**PLEASE TAKE NOTICE** that Plaintiffs hereby demands a trial by jury as to all issues of fact and/or law.

Dated: ___12/23/08___                              /s/ Roger C. Mattson, Esquire _____
                                                   ROGER C. MATTSON, ESQ.
                                                   Attorney for Plaintiffs

# Exhibit A

After Recording Return To:

**CitiFinancial Mortgage Company, Inc.**
**Attn: CFMC/Trailing Documents**
**P.O. Box 104759**
**Irving, TX 75014**

Lender Loan Number: 0002403792
If Applicable: MERS MIN:

MERS Phone: 1-888-679-6377

———————————————————— *[Space Above This Line For Recording Data]* ————————————

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement") is made this **21st day of April, 2006** (the "Effective Date") by and between
**MICHAEL OGBIN and LYNN P OGBIN** ("Borrower")
and **CitiFinancial Mortgage Company, Inc.** ("Lender")

, amends and supplements one certain loan agreement or promissory note ("Note") dated **January 11, 1995**, in the original principal amount of **eighty two thousand nine hundred eighty two and 74/100ths Dollars ($82,982.74)** executed by Borrower.

Borrower acknowledges that Lender is the holder and the owner of the Note and understands that Lender may transfer the Note, as amended by this Agreement, and that anyone who takes the Note by transfer and who is entitled to receive payments under the Note is called the "Lender" in this Agreement. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated **January 11, 1995**, and filed for record on **[As Per Deed of Trust]**, under  of the real property records of **GLOUCESTER** County, **New Jersey**. Said Security Instrument conveys the real and personal property described in such Security Instrument (the "Property") located at:
**111 ROBINS RUN E, SWEDESBORO, NJ 08085**
(Property Address): which real property is more particularly described in the Security Instrument.

[ ]   **MERS LOAN.** If this box is checked, the loan evidenced by the Note and secured by the Security Instrument was assigned to or the Security Instrument was prepared in the name of the Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware and has an address and telephone number of P. O. Box 2026, Flint, MI 48501-2026, (888) 679-6377. All references to Lender shall mean the Lender above and, to the extent referencing the holder of the Security Instrument, shall reference MERS acting solely as nominee for Lender.

Lender has made certain advances under the Security Instrument for which Borrower is obligated to pay Lender upon demand or certain payments otherwise due under the terms of the Note or Security Instrument are currently past due. Borrower now desires to extend or rearrange the time and manner of (re)payment of the Note and to extend and carry forward the lien(s) on the Property whether created by the Security Instrument or otherwise. Lender, the legal holder and owner of the Note and of the lien(s) securing the same has agreed at the request of the Borrower to extend or rearrange the time and manner of payment of the Note.

For and in consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.   [ ]   **Modification Fee:** If this box is checked, Borrower agrees to pay Lender a fee for processing the modification set forth in this Agreement of $ . This Modification Fee shall be due and payable on the Maturity Date as set forth below, unless the loan is paid prior to maturity by payoff or otherwise. when such fee shall be due and payable.

2.    **Waived or Forgiven Amounts**: For and in consideration of the modification of the loan as described herein, Lender has agreed to waive or forgive the following amounts that have accrued and are owing under the Note or Security Instrument, as follows:

|       |                                                                                                                                                                         |         |
|-------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------|---------|
| (i)   | Unpaid Principal (not included in paragraph 3 below)                                                                                                                     | $ 0.00  |
| (ii)  | Accrued Interest Previously Extended (not included in paragraph 4 below)                                                                                                 | $ 0.00  |
| (iii) | Accrued Interest Currently Due (not included in paragraph 3 or 4 below)                                                                                                  | $ 0.00  |
| (iv)  | Late Charges (not included in paragraph 3 or 4 below)                                                                                                                    | $ 0.00  |
| (v)   | Advances regarding real estate taxes or to pay insurance premiums (not included in paragraph 3 or 4 below)                                                               | $ 0.00  |
| (vi)  | Appraisal fees, attorneys' fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims, if any. (not included in paragraph 3 or 4 below) | $ 0.00  |
|       | Total Waived/Forgiven Amount                                                                                                                                             | $ 0.00  |

Borrower acknowledges and understands that Lender may be required to report certain cancellation of debt for discharges of indebtedness to the Internal Revenue Service on Form 1099-C or a similar form, including any that may be reportable because of this Agreement.

3.    **Acknowledgment of Principal Balance**: Borrower acknowledges that as of the Effective Date and except for the Additional Amounts described in paragraph 4 below, and after excluding the Waived/Forgiven Amount described in paragraph 2 above, the amount payable under the Note and secured by the Security Instrument is the total of the following amounts indicated below:

| Description |                                                                                                                                                      | Amount Due   |
|-------------|------------------------------------------------------------------------------------------------------------------------------------------------------|--------------|
| (i)   | Unpaid principal balance (not included in paragraph 1 above)                                                                                                | $80,005.05   |
| (ii)  | Accrued unpaid interest (not included in paragraph 2 above or 4 below)                                                                                      | $ 799.32     |
| (iii) | Late charges accrued and unpaid (not included in paragraph 2 above or 4 below)                                                                              | $ 0.00       |
| (iv)  | Advances regarding real estate taxes or to pay insurance premiums (not included in paragraph 2 above or 4 below)                                            | $30,608.04   |
| (v)   | Appraisal fees, attorneys fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims (not included in paragraph 2 above or 4 below) | $4,547.70    |
| (vi)  | Advances to establish initial escrow account, if any                                                                                                       | $ 0.00       |
|       | Total Amount Due                                                                                                                                            | $115,960.11 (the "Principal Balance"). |

4.   **Additional Amounts Owed.**  The Borrower acknowledges and agrees that in addition to the Principal Balance described in paragraph 3 above, and after excluding the Waived/Forgiven Amount described in paragraph 2 above, Borrower is currently obligated to Lender for the following additional charges listed under the Additional Amount column below, herein referred to as the "Additional Amount."   The Additional Amount has accrued or been incurred under the terms of the loan documents and/or Security Instrument or under the terms of this Agreement:

<u>Additional Amount</u>

|       |                                                                                                                                                          |              |
|-------|----------------------------------------------------------------------------------------------------------------------------------------------------------|--------------|
| (i)   | Modification Fee                                                                                                                                          | $0.00        |
| (ii)  | Accrued Interest Previously Extended (not included in paragraph 2 above)                                                                                  | $15,450.14   |
| (iii) | Accrued Interest Currently Due (not included in paragraph 2 or 3 above)                                                                                   | $  0.00      |
| (iv)  | Late Charges accrued and unpaid (not included in paragraph 2 or 3 above)                                                                                  | $  0.00      |
| (v)   | Advances regarding real estate taxes or to pay insurance premiums (not included in paragraph 2 or 3 above)                                                | $  0.00      |
| (vi)  | Appraisal fees, attorneys' fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims against property, if any (not included in paragraph 2 or 3 above) | $ 600.60     |
|       | **Additional Amount Total**                                                                                                                               | $16,050.74   |

The Additional Amount is in addition to the Principal Balance described in paragraph 3 above.  The Additional Amount shall continue to be due and owing by Borrower to Lender in accordance with the terms of the loan documents and Security Instrument or due to this modification; provided however, Lender agrees that for so long as Borrower makes the principal and interest payments as provided in paragraph 6 below in a timely manner and ultimately pays the Additional Amount to the extent obligated under the terms of the loan documents or Security Instrument, which if not sooner demanded shall be due and payable upon any voluntary loan payoff or on the Maturity Date, Lender will not seek to enforce its security interest under the terms of the Security Instrument solely for failure to pay the Additional Amount.

Notwithstanding the foregoing, to the extent personal liability of any or all of the Borrowers (if more than one) has been discharged in bankruptcy with respect to any amount payable under the Note, as modified herein, nothing contained herein shall be construed to impose personal liability to repay any such obligation on the Borrowers whose obligations have been so discharged.  The Borrowers acknowledge that the Additional Amount set forth above may not be reflected in the loan amount reported by Lender to any credit reporting agency or reported as part of the balance on any receipt or statement issued by Lender, but nevertheless Borrowers acknowledge that such Additional Amount is due and payable as set forth above. **Notice: The Parties understand and agree that any amounts that are written off, capitalized into principal or deferred to the end of the loan will all be characterized as "waived" in the first monthly statement that captures the terms of the Loan Modification.**

5.   **Repayment Terms:**  Interest will be charged on the Principal Balance until the full amount of principal has been paid.  Borrower will pay interest at the rate of 11.90% per year from the Effective Date.

Any terms of the Note or Security Instrument which would result in any further interest rate reduction, including without limitation a Timely Payment Rewards program, Smart Step program or Freedom Loan program, are hereby deleted and will not be applicable to the Note as modified herein.  Further, any terms of the Note or Security Instrument which provide for an adjustment of the interest rate are hereby deleted.

6.  **Time and Place of Payments**: The Borrower promises to make monthly principal and interest payments of U.S. **$1183.86**, beginning on May 21, 2006, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **April 21, 2036** ("Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date. The Borrower will make such payments at P.O. Box 9023, Des Moines, IA 50362-9023, or at such other place as Lender may require. Payments will be applied in accordance with the terms of the Note and Security Instrument or other loan documents.

7.  **Automatic Payment Draft**: If Borrower currently participates in a program allowing a decrease in interest rate when payments are made by automatic draft or other electronic means, including without limitation the Equity Builder, ACH or other process, such interest rate decrease shall be in addition to the revised interest rate set forth in paragraph 5 above. In addition, the amount of the automatic draft contained in the payment draft, ACH, Equity Builder or other process will not change unless instructed by Borrower to Lender in writing.

8.  **Payment Waiver Protection Monthly Fee**: If the terms of Borrower's Note or other loan document provides for a monthly fee for Payment Waiver Protection coverage, in addition to the monthly payment of principal and interest, such monthly fee shall continue provided, the monthly fee payable shall be changed to the following:

    PWP Monthly Fee:  $

    Other than the change in the monthly fee amount, all other terms of the Payment Waiver Protection Program remain in effect.

9.  **Late Charges for Overdue Payments**: If the Lender has not received the full amount of any monthly payment when due, Borrower will pay a late charge to the Lender in an amount as set forth in the Note.

10. **Borrower's Right to Prepay**: Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When Borrower makes a prepayment, Borrower will tell the Note Holder in writing that Borrower is doing so and will pay to Lender any prepayment penalty or fee provided in the Note or Security Instrument, if any.

11. **Renewal and Extension of Maturity**: It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the Indebtedness evidenced by the Note, as renewed, modified, and extended (if the Maturity Date of the original Note has been changed) hereby, has been fully paid. Lender and Borrower acknowledge and agree that such extension (if the Maturity Date of the original Note has been changed), renewal, amendment, modification, or rearrangement shall in no manner affect or impair the Note or the liens and security interests securing same, the purpose of this Agreement being simply to extend (if the Maturity Date of the original Note has been changed), modify, amend or rearrange the time and the manner of payment of the Note and the indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note (including if applicable any and all vendor's liens securing the Note), which are expressly acknowledged by the Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note. The Borrower hereby expressly waives the benefit of any and all statutes of limitation which might otherwise inure to Borrower's benefit, or be in any way applicable to Borrower's obligations under the terms of any and all instruments described herein.

12. **Transfer of the Property or a Beneficial Interest in Borrower**: If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration

Loan No: 0002403792

Loan Modification Agreement (Fixed Rate/Capitalization)
CitiFinancial Mortgage Company, Inc.               Page 4 of 11                    DOC_00001_011506

of this period, the Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on the Borrower.

13. **Release and Waiver of Other Claims:**  In consideration of the modification of certain provisions of the Note and Security Instrument, all as herein provided, and the other benefits received by Borrower hereunder, Borrower acknowledges that Borrower currently has no claims against Lender arising out of the origination or servicing of the Note or Security Instrument and does hereby release Lender, and its predecessors, successors, affiliates, assigns, agents, officers, directors, employees and representatives, of and from any and all claims, demands, actions and causes of action of any and every kind of character, whether known or unknown, present or future, which Borrower may have against Lender, and its predecessors, successors, affiliates, assigns, agents, officers, directors, employees and representatives, arising out of or with respect to any and all transactions relating to the Note and the Security Instrument occurring prior to the date hereof.

14. **Loan Documentation:**  As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's obligations to Lender thereunder.  In the event of any inconsistency between this Agreement and the terms of the Note and Security Instruments, this Agreement shall govern.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.  Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

15. **Co-Signer Liability:**  Notwithstanding any provision to the contrary in this Agreement, if any Borrower designated above signs this Agreement but did not execute the Note, such Borrower shall be deemed to be co-signing this Agreement only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Agreement, and shall be deemed a "Co-signer" under this paragraph.  Such Co-signer is not personally obligated to pay the sums secured by the Security Instrument, and agrees that Lender and the remaining Borrower's may agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note or the Security Instrument, without Co-signer's consent.

16. **Taxes and Insurance.**  Borrower acknowledges that the monthly payments on the Note, as modified and set forth in paragraph 6 above, do not include escrow payments for taxes and insurance or other payments. Unless Borrower is required to establish an escrow account herewith and an escrow account is established, the payment of such items remains the sole obligation of Borrower.  Borrower acknowledges that in the event Lender has advanced or advances funds for the payment of real estate taxes that are included in the Principal Balance set forth in this Agreement and if such advanced funds are returned to the Lender by a taxing authority for any reason, then the amount of such funds returned to the Lender shall be applied to reduce the amount of the Principal Balance.

17. **Escrow Provisions.**

   The Security Instrument shall be amended to add the following escrow provisions:

   A.  **Definitions:**

   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

"RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

"Security Instrument" means the mortgage, deed of trust, deed to secure debt, or other designated document which secures the obligation of Borrower to Lender, to which this Addendum is added.

B. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section D. below. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.

Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights and pay such amount and Borrower shall then be obligated to repay to Lender any such amount immediately upon demand. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given to Borrower and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section B.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA. If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Loan No: 0002403792

Loan Modification Agreement (Fixed Rate/Capitalization)
CitiFinancial Mortgage Company, Inc.                    Page 6 of 11                    DOC_00001_011506

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

C. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section B above.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien, in legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section C.

Lender may require Borrower to pay a one-time charge for real estate tax verification and/or reporting service used by Lender in connection with this Loan.

D. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section D shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Loan No: 0002403792

Loan Modification Agreement (Fixed Rate/Capitalization)
CitiFinancial Mortgage Company, Inc.                    Page 7 of 11                    DOC_00001_011506

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property by foreclosure or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

[X]     If checked, an Escrow Account is required to be established by Borrower for the payment of the Escrow Items described in the Escrow Provisions above. The sums required for payment of the Escrow Items shall be in addition to the monthly principal and interest payment set forth in paragraph 5 above. If not checked, Escrow Items will not be collected by Lender and Borrower shall be solely responsible for payment of all taxes and insurance premiums.

18.   **Credit Insurance**. If Borrower purchased any credit life insurance, credit disability insurance or other type of credit insurance in connection with the original loan which is modified in this Agreement, Borrower acknowledges that such insurance will continue to cover only that coverage amount and for that term described in the Certificate of Insurance.

19.   **No Oral Agreements: The written Loan Agreements represent the final agreements between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.**

EXECUTED effective as of the day and year first above written.

Witnesses (Required if Property located in CT, FL, GA, LA, SC or VT):

| _____ (Witness) | **MICHAEL OGBIN** _____ (Borrower) |
| _____ (Witness) | **LYNN P OGBIN** _____ (Borrower) |
| _____ (Witness) | _____ (Borrower) |

_____          _____
(Witness)                                          (Borrower)


ACCEPTED AND AGREED TO BY LENDER:            If MERS Loan:
CitiFinancial Mortgage Company, Inc.         Mortgage Electronic Registration Systems, Inc.


By: _____          By: _____


Title: _____        Title: _____


_____[Acknowledgments on Following Pages]_____

### INDIVIDUAL ACKNOWLEDGMENT

State of

County of

Before    me,    the    undersigned    authority,    on    this    day    personally    appeared

MICHAEL OGBIN

known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name is/are subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.



Given under my hand and seal this    day of

Notary Public
Notary's Printed Name: _____
My commission expires: _____

### INDIVIDUAL ACKNOWLEDGMENT

State of

County of

Before    me,    the    undersigned    authority,    on    this    day    personally    appeared

LYNN P OGBIN

known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name is/are subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal this    day of

Notary Public
Notary's Printed Name: _____
My commission expires: _____

Loan No: 0002403792

Loan Modification Agreement (Fixed Rate/Capitalization)
CitiFinancial Mortgage Company, Inc.    Page 10 of 11    DOC_00001_011506

**INDIVIDUAL ACKNOWLEDGMENT**

State of

County of

Before      me,      the      undersigned      authority,      on      this      day      personally      appeared

known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name is/are subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

     Given under my hand and seal this      day of

                                       Notary Public
                                       Notary's Printed Name: _____
                                       My commission expires: _____

**INDIVIDUAL ACKNOWLEDGMENT**

State of

County of

Before      me,      the      undersigned      authority,      on      this      day      personally      appeared

known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name is/are subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

     Given under my hand and seal this      day of

                                        Notary Public
                                       Notary's Printed Name: _____
                                       My      commission      expires: _____

# Exhibit B

Recording Requested By
VERIDUGO TRUSTEE SERVICE CORPORATION

When Recorded Return To

MICHAEL OGBIN
111 ROBAS RUN E
SWEDESBORO, NJ 08085-1333



---

### Satisfaction, Cancellation or Discharge of Mortgage

CITIFINANCIAL MORTGAGE CORPORATION #:0002423192 "OGBIN" Lender ID:11024/ESERVE  Glouceser, New Jersey P/F
0018/2007

KNOW ALL MEN BY THESE PRESENTS that CitiMortgage, Inc., Successor In Interest By Merger To
CitiFinancial Mortgage Company, Inc. Successor In Interest to Associates Home Equity Services f/k/a Ford
Consumer Finance Company, Inc. as holder of a certain mortgage executed to secure payment of $52,983.74 and
whereof whose parties, dates and recording information are below, does hereby acknowledge that it has received full
payment and satisfaction of the same, and in consideration thereof, does hereby cancel and discharge said
mortgage. Said Mortgage may be discharged of record and is now cancelled and void.

Original Mortgagor: MICHAEL OGBIN AND LYNN P OGBIN

Original Mortgagee: FORD CONSUMER FINANCE COMPANY, INC.

Date Executed:  01/11/1995

Date Recorded:  01/11/1995  in Book/Reel/Liber: MB 2631 Page/Folio: 001 at Instrument No.: 097278

In the County of Gloucester, State of New Jersey

IN WITNESS WHEREOF, the undersigned holder has set its name hereunto:

CitiMortgage, Inc., Successor In Interest By Merger To CitiFinancial Mortgage Company, Inc. Successor In Interest to
Associates Home Equity Services f/k/a Ford Consumer Finance Company, Inc.
On May 22nd, 2007

By:
CAROL A DIVEL, Vice President



STATE OF Maryland
COUNTY OF Carroll

On May 22nd, 2007, before me, SHAWN LYERLY, a Notary Public in and for Carroll in the State of Maryland,
personally appeared CAROL A DIVEL, Vice President, personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument

WITNESS my hand and official seal

SHAWN LYERLY
Notary Expires: 11/08/2008