# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

MICHAEL and LYNN OGBIN Individually and as a class representative on behalf of others similarly situated,

        Plaintiffs,

v.

CITIFINANCIAL MORTGAGE COMPANY, INC. f/k/a Ford Consumer Finance Company, Inc.

        Defendants.

Civil Action No. 09-00023-NLH-JS

---

# DEFENDANT CITIMORTGAGE CO., INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Marc C. Singer
Vincent F. Papalia
**SAIBER LLC**
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5311
(973) 622-3333

Of Counsel:
Lucia Nale
Maritoni Kane
**Mayer Brown LLP**
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600

Miriam R. Nemetz
Richard P. Caldarone[*]
**Mayer Brown LLP**
1909 K Street, N.W.
Washington, DC 20006
(202) 263-3000

---

[*] Admitted in Virginia only; not admitted in the District of Columbia. Practicing under the supervision of firm principals.

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES...................................................................iii

INTRODUCTION AND STATEMENT OF FACTS...............................1

STANDARD OF REVIEW...................................................................2

ARGUMENT .......................................................................................4

I.    THE COMMON LAW CLAIMS MUST BE DISMISSED. ...............5

    A.    Plaintiffs Fail to State an Action for Breach of Contract...........5

        1.    Plaintiffs Have Not Alleged, and Cannot Allege, a Breach. ...................................................................6

        2.    Plaintiffs Have Not Alleged Cognizable Damages..........8

    B.    Plaintiffs Cannot Sustain, and Have Not Properly Pled, a Negligence Claim. ........................................................9

        1.    CitiMortgage Owed No Tort-Based Duty to the Plaintiffs. ...................................................................9

        2.    Negligence Is Insufficiently Pled.................................11

    C.    The Complaint Does Not State a Claim for Breach of the Duty of Good Faith and Fair Dealing....................................12

    D.    The Unjust Enrichment Claim is Barred and Fails to Meet *Twombly*'s Pleading Standard. .......................................14

        1.    Unjust Enrichment Is Precluded by the Existence of a Valid Contract. ...............................................14

        2.    The Complaint Fails to Put CitiMortgage on Notice of the Basis of the Claim................................................15

II.    THE CONSUMER FRAUD ACT CLAIMS MUST BE DISMISSED. ......16

    A.    The CFA Claims Sound in Fraud............................................16

B.    The CFA Counts Are Insufficiently Pled. ................................. 18

    1.    Counts V Through VIII Are Not Pled with Particularity. ...................................................................... 19

    2.    Plaintiffs Completely Fail to Allege an Ascertainable Loss or the Necessary Aggravating Circumstances ....... 20

C.    The Claims Are Barred by the Economic Loss Doctrine ......... 23

D.    The Violations of Other Statutes Plaintiffs Allege Cannot Support Liability Under the CFA ............................................. 24

    1.    The Statutes Do Not Provide for Private Rights of Action. ....................................................................... 26

    2.    Private Plaintiffs May Not Attempt to Enforce the FTCA. ....................................................................... 28

    3.    The Fair Foreclosure Act Does Not Apply. ................... 29

    4.    Plaintiffs Cannot State a Claim Under State Court Rules. ....................................................................... 31

III.    COUNT IX FAILS TO GIVE CITIMORTGAGE FAIR NOTICE OF THE CLAIM ASSERTED. ................................................. 33

IV.    THE LICENSED LENDERS ACT CLAIM MUST BE DISMISSED. ...................................................................................... 34

    A.    Plaintiffs Have Not Alleged the Existence of Prior Liens. ...... 35

    B.    There Is No Private Right of Action. ........................................ 35

V.    COUNT XI DOES NOT STATE A PROPER CLAIM FOR RELIEF. ...................................................................................... 38

VI.    PLAINTIFFS' CLAIMS ARE PREEMPTED IN PART ................. 38

VII.    THE COMPLAINT FAILS TO STATE A CLAIM BASED ON ANY OTHER FEES OR CHARGES. ......................................................... 43

CONCLUSION ............................................................... 46

# TABLE OF AUTHORITIES

## CASES

PAGE

*Akshayraj, Inc. v. Getty Petroleum Marketing, Inc.*,
    2007 WL 708852 (D.N.J. Mar. 6, 2007)......................................................... 13

*Alexander v. Manza*,
    132 N.J.L. 374 ( A & E 1945)......................................................... 46

*Alfred Dunhill Ltd. v. Interstate Cigar Co., Inc.*,
    499 F.2d 232 (2d Cir. 1974)......................................................... 28

*Animal Sci. Products, Inc. v. China National Metals &*
    *Minerals Import & Export Corp.*,
    2008 WL 5597656 (D.N.J. Dec. 30, 2008)......................................................... 3

*Barrows v. Chase Manhattan Mortgage Corp.*,
    465 F. Supp. 2d 347 (D.N.J. 2006)......................................................... 13, 31

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)......................................................... passim

*Benson v. Kwikset Corp.*,
    2002 WL 34396029 (Cal. Super. Ct. May 23, 2002)......................................................... 27, 29

*Bergen Builders, Inc. v. Horizon Developers, Inc.*,
    44 N.J. 435 (1965)......................................................... 32

*Bosland v.  Warnock Dodge Inc.*,
    197 N.J. 543 (2009)......................................................... 21

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*,
    226 F. Supp. 2d 557 (D.N.J. 2002)......................................................... 23

*Burlington County Country Club v. Midlantic Nat'l Bank S.*,
    538  223 N.J. Super. 227 (Ch. 1987)......................................................... 46

*C.B. Snyder Realty Co. v. National Newark & Essex Banking Co.,*
   14 N.J. 146 (1953).......................................................................................... 14

*Cambridge Management Group v. Robert A. Kosseff & Associates,*
   2007 WL 2084895 (D.N.J. July 18, 2007)..................................................... 13

*Chemtech Int'l, Inc. v. Chem. Injection Tech, Inc.,*
   170 F. App'x 805, 808 (3d Cir. 2006) ............................................................ 8

*Chi. Five Portfolio, LLC v. Director, Division of Taxation,*
   2008 WL 5539674 (N.J. Tax Ct. Dec. 11, 2008)........................................... 7

*City of Camden v. Green,*
   54 N.J.L. 591 (E & A 1892).......................................................................... 4

*Connolly v. Mitsui O.S.K. Lines (Am.), Inc.,*
   2007 WL 4207836 (D.N.J. Nov. 21, 2007) ................................................. 16

*Coppolino v. Total Call International, Inc.,*
   588 F. Supp. 2d 594 (D.N.J. 2008) .............................................................. 39

*Corestar International Pte. Ltd. v. LPB Commc'ns, Inc.,*
   513 F. Supp. 2d 107 (D.N.J. 2007) .............................................................. 14

*Cort v. Ash,*
   422 U.S. 66 (1975) ....................................................................................... 38

*County of Morris v. Fauver,*
   153 N.J. 80 (1988)......................................................................................... 7

*Cox v. Sears Roebuck & Co.,*
   138 N.J. 2 (1994)........................................................................... 17, 21, 25

*Cryofab, Inc. v. Precision Medical, Inc.,*
   2008 WL 2705007 (D.N.J. July 8, 2008)..................................................... 12

*D'Angelo v. Miller Yacht Sales,*
   261 N.J. Super. 683 (App. Div. 1993) ......................................................... 46

*D'Ercole Sales, Inc. v. Fruehauf Corp.*,
   206 N.J. Super. 11 (App. Div. 1985) ............................................................ 17

*D.R. Horton Inc. v. Dynastar Development, LLC*,
   2005 WL 1939778 (N.J. Super. Ct. Aug. 10, 2005) ............................... 14, 15

*Dewey v. Volkswagen AG*,
   558 F. Supp. 2d 505 (D.N.J. 2008) ........................................................ 12, 20

*Dykes v. S.E. Pa. Transport Authority*,
   68 F.3d 1564 (3d Cir. 1995) .......................................................................... 5

*Emerson Radio Corp. v. Orion Sales, Inc.*,
   2000 WL 49361 (D.N.J. Jan. 10, 2000) .......................................................... 5

*FDIC v. Bathgate*,
   27 F.3d 850 (3d Cir. 1994) ........................................................................... 18

*FTC v. NorVergence, Inc.*,
   2005 WL 3754864 (D.N.J. July 22, 2005) ..................................................... 29

*Fenwick v. Kay America Jeep, Inc.*,
   72 N.J. 372 (1977) ....................................................................................... 17

*Fidelity Federal Sav. & Loan Association v. de la Cuesta*,
   458 U.S. 141 (1982) ..................................................................................... 40

*Frederico v. Home Depot, Inc.*,
   507 F.3d 188 (3d Cir. 2007) ................................................................... 17, 18

*Frederico v. Home Depot, Inc.*,
   2006 WL 624901 (D.N.J. Mar. 10, 2006) ................................................... 9, 44

*Globe Motor Car Co. v. First Fidelity Bank, N.A.*,
   273 N.J. Super. 388 (Law Div. 1993) ........................................................... 10

*Gross v. TJH Automobile Co.*,
   380 N.J. Super. 176 (App. Div. 2005) ........................................................... 22

*Hanson Engineering, Inc. v. Ascher,*
    2008 WL 1782392 (D.N.J. Apr. 18, 2008) ...................................................... 5

*Helena Chemical Co. v. Nelson,*
    2000 WL 963911 (D.N.J. June 22, 2000) ...................................................... 27

*Henderson v. Hertz Corp.,*
    2005 WL 4127090 (N.J. App. Div. June 22, 2006) ...................................... 27

*Holloway v. Bristol-Myers Corp.,*
    485 F.2d 986 (D.C. Cir. 1973) ............................................................... 28, 29

*Hyman v. WM Finance Services, Inc.,*
    2008 WL. 1924879 (D.N.J. Apr. 29, 2008) ........................................ 8, 36, 37

*International Bus. Lists, Inc. v. AT&T Co.,*
    147 F.3d 636 (7th Cir. 1998) ........................................................................ 7

*International Minerals & Min. Corp. v. Citicorp N.A., Inc.,*
    736 F. Supp. 587 (D.N.J. 1990) ................................................................. 10

*Jalowiecki v. Leuc,*
    182 N.J. Super. 22 (App. Div. 1981) ..................................................... 37, 38

*Kalow & Springnut, LLP v. Commence Corp.,*
    2008 WL 2557506 (D.N.J. June 23, 2008) ................................................. 20

*Kalow & Springnut, LLP v. Commence Corp.,*
    2009 WL 44748 (D.N.J. Jan. 6, 2009) ........................................................ 18

*Koronthaly v. L'Oreal USA, Inc.,*
    2008 WL 2938045 (D.N.J. July 29, 2008) .................................................. 21

*Kugler v. Romain,*
    58 N.J. 522 (1971) ....................................................................................... 17

*Lemelledo v. Ben. Management Corp. of America,*
    150 N.J. 255 (1997) ..................................................................................... 37

*In re Lipscomb*,
    2006 WL 4452988 (Bankr. D.N.J. May 17, 2006) ........................................ 31

*Lum v. Bank of America*,
    361 F.3d 217 (3d Cir. 2004) ..................................................................... 3, 19

*Margulies v. Chase Manhattan Mortgage Co.*,
    2005 WL 2923580 (App. Div. Nov. 7, 2005) ............................................. 10

*Marracco v. Kuder*,
    2008 WL 4192064 (D.N.J. Sept. 9, 2008) ..................................................... 5

*Medical Society of N.J. v. Amerihealth HMO, Inc.*,
    376 N.J. Super. 57-60 (App. Div. 2005) ...................................................... 38

*Mezzina v. U.S. Department of Housing & Urban Development*,
    2008 WL 630481 (D.N.J. Mar. 7, 2008) ....................................................... 45

*Moore v. N.Y. Cotton Exchange*,
    270 U.S. 593 (1926) .................................................................................... 28

*Morse v. Lower Merion Sch. District*,
    132 F.3d 902 (3d Cir. 1997) .......................................................................... 4

*Moser v. Milner Hotels, Inc.*,
    6 N.J. 278 (1951) ......................................................................................... 14

*In re N.J. State Board of Dentistry*,
    84 N.J. 582 (1980) ......................................................................................... 4

*National Amusements, Inc. v. N.J. Turnpike Authority*,
    261 N.J. Super. 468 (Law Div. 1992) .......................................................... 14

*Nickerson v. Quaker Group*,
    2008 WL 2600720 (N.J. App. Div. July 3, 2008) ......................................... 25

*Pacholec v. Home Depot USA*,
    2006 WL 2792788 (D.N.J. Sept. 26, 2006) .................................................. 18

*Paradise Hotel Corp. v. Bank of Nova Scotia,*
   842 F.2d 47 (3d Cir. 1988)............................................................................ 10

*Parker v. Howmedica Osteonics Corp.,*
   2008 WL 141628 (D.N.J. Jan. 14, 2008).......................................... 20, 21, 22

*Parkway Mortgage, Inc. v. Scott,*
   2001 WL 1715779 (D.N.J. Dec. 21, 2001)................................................... 44

*Pathfinder Management, Inc. v. Mayne Pharma PTY,*
   2008 WL 3192563 (D.N.J. Aug. 5, 2008) .................................................... 13

*Payne v. Fujifilm U.S.A., Inc.,*
   2007 WL 4591281 (D.N.J. Dec. 28, 2007).................................................. 19

*Pension Ben. Guaranty Corp. v. White Consolidated Industrial, Inc.,*
   998 F.2d 1192 (3d Cir. 1993)......................................................................... 6

*Polzo v. County of Essex,*
   195 N.J. 569 (2008)........................................................................................ 9

*Premier Pork LLC v. Westin, Inc.,*
   2008 WL 724352 (D.N.J. Mar. 17, 2008)................................................... 14

*Proske v. St. Barnabas Med. Ctr.,*
   313 N.J. Super. 311 (App. Div. 1998) .......................................................... 36

*R.J. Gaydos Insurance Agency, Inc. v. National Consumer Insurance Co.,*
   168 N.J. 255 (2001)........................................................................... 36, 37, 38

*Rait v. Sears, Roebuck & Co.,*
   2009 WL 250309 (D.N.J. Feb. 3, 2009) .......................................... 18, 20, 22

*Raynor v. United States,*
   604 F. Supp. 205 (D.N.J. 1984) .................................................................. 10

*Regency Sav. Bank v. Morristown Mews, L.P.,*
   363 N.J. Super. 363 (App. Div. 2003) .......................................................... 32

*Sahli v. Woodbine Board of Education,*
    193 N.J. 309 (2008)...................................................................... 34

*Saltiel v. GSI Consultants, Inc.,*
    170 N.J. 297 (2002)................................................................. 10, 11

*Seville Industrial Machine Corp. v. Southmost Machine Corp.,*
    742 F.2d 786 (3d Cir. 1984)....................................................... 3, 21

*Shapiro v. Solomon,*
    42 N.J. Super. 377 (App. Div. 1956) ............................................ 14

*Silvas v. E\*Trade Mortgage Corp.,*
    514 F.3d 1001 (9th Cir. 2008)...................................................... 42

*Smiriglio v. Hudson United Bank,*
    98 F. App'x 914, 915 (3d Cir. 2004) ............................................. 32

*Solo v. Bed Bath & Beyond, Inc.,*
    2007 WL 1237825 (D.N.J. Apr. 26, 2007) .................................... 21

*Sons of Thunder, Inc. v. Borden, Inc.,*
    148 N.J. 396 (1997)..................................................................... 12

*Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd.,*
    181 F.3d 410 (3d Cir. 1999).......................................................... 39

*Sovereign Bank v. BJ's Wholesale Club, Inc.,*
    533 F.3d 162 (3d Cir. 2008)........................................................... 3

*Torres-Hernandez v. CVT Prepaid Sols., Inc.,*
    2008 WL 5381227 (D.N.J. Dec. 17, 2008)......................... 17, 18, 19, 20, 21

*Transamerica Mortg. Advisors, Inc. v. Lewis,*
    444 U.S. 11 (1979) ...................................................................... 36

*Traverso v. Home Depot USA, Inc.,*
    2007 WL 3124698 (D.N.J. Oct. 23, 2007).................................... 23

*Turf Lawnmower Repaid, Inc. v. Bergen Record Corp.,*
   139 N.J. 392 (1995)........................................................................ 42

*Turner v. First Union National Bank,*
   162 N.J. 75 (1999).......................................................................... 42

*Umland v. PLANCO Finance Services, Inc.,*
   542 F.3d 59 (3d Cir. 2008).............................................................. 4

*Unalachtigo Band of Nanticoke-Lenni Lenape Nation v. State,*
   375 N.J. Super. 330 (App. Div. 2005) ........................................... 7

*Van Orman v. America Co.,*
   680 F.2d 301 (3d Cir. 1982).......................................................... 14

*Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.,*
   210 F. Supp. 2d 552 (D.N.J. 2002) ................................................ 5

*VRG Corp. v. GKN Realty Corp.,*
   135 N.J. 539 (1994)....................................................................... 23

*Vukovich v. Haifa, Inc.,*
   2007 WL 655597 (D.N.J. Feb. 27, 2007) ..................................... 23

*Waldo v. N. America Van Lines, Inc.,*
   669 F. Supp. 722 (W.D. Pa. 1987)........................................... 26, 28

*West v. America Honda Motor Co.,*
   2008 WL 4104683 (D.N.J. Aug. 28, 2008) ................................... 39

*Whittingham v. Amended Mortgage Electric Registration Services, Inc.,*
   2007 WL 1456196 (D.N.J. May 15, 2007) .................................... 26

*Wilson v. Amerada Hess Corp.,*
   168 N.J. 236 (2001)........................................................................ 12

*Wilson v. General Motors Corp.,*
   190 N.J. 336 (2007)........................................................................ 27

*Wiltz v. Middlesex County Office of Prosecutor*,
  2006 WL 1966654 (D.N.J. July 12, 2006) .................................................. 12

*Woods Corp. Associates v. Signet Star Holdings, Inc.*,
  910 F. Supp. 1019 (D.N.J. 1995) .................................................. 11

*Zinn v. Seruga*,
  2006 WL 2135811 (D.N.J. July 28, 2006) .................................................. 9, 44

## STATUTES

12 U.S.C. § 1 *et seq* .................................................. 39

12 U.S.C. § 1461 *et seq* .................................................. 39

12 U.S.C. § 1464(a)(1) .................................................. 40

15 U.S.C. § 45(n) .................................................. 29

N.J. Stat. 2A:14-1 .................................................. 45

N.J. Stat. 2A:14-4 .................................................. 45

N.J. Stat. 2A:50-62 .................................................. 30

N.J. Stat. 2A:50-57 .................................................. 29, 31, 33

N.J. Stat. 17:11C-2 .................................................. 35, 37

N.J. Stat. 17:11C-28 .................................................. 34, 35, 36, 37, 38

N.J. Stat. 17:11C-33 .................................................. 37

N.J. Stat. 17:11C-48 .................................................. 36

N.J. Stat. 17:11C-49 .................................................. 36

N.J. Stat. 46:10A-6(d) .................................................. 42

N.J. Stat. 56:8-2 .................................................. 17

N.J. Stat. 56:12-1 ........................................................................................... 34

N.J. Stat. 56:12-15 ................................................................................... 33, 34

## REGULATIONS

12 C.F.R. § 559.3(h) ..................................................................................... 39

12 C.F.R. § 560.2 ........................................................................ 40, 41, 42, 43

66 Fed. Reg. 34784 ....................................................................................... 40

61 Fed. Reg. 50951 ....................................................................................... 41

## COURT RULES

Fed. R. Civ. P. 8(a) ......................................................................................... 2

Fed. R. Civ. P. 9(b) ........................................................................ 3, 17, 18, 19

N.J. R. 4:42-9(a)(4) ....................................................................................... 32

N.J. R. 4:42-10(a) ......................................................................................... 32

## INTRODUCTION AND STATEMENT OF FACTS

Plaintiffs Michael and Lynn Ogbin allege that, some years after defaulting on a note and mortgage with Ford Consumer Finance Co., a predecessor of CitiMortgage, Inc. ("CitiMortgage"), they requested a loan modification agreement.[1]  CitiMortgage acquiesced, and both parties signed the modification agreement, which delineated the amounts still due on the plaintiffs' mortgage. Plaintiffs now challenge an alleged $5,147 charge for "attorney's fees and costs" included in the modification.

Plaintiffs' primary argument is that, by charging the alleged fee in accordance with the modification agreement, CitiMortgage breached the parties' contract.  This argument fails for the simple reason that the modification agreement is an amendment to the underlying note and mortgage—and its terms are therefore terms of the contract.   Plaintiffs, in other words, claim that CitiMortgage breached the contract not by failing to perform but by requesting that the plaintiffs fulfill their contractual obligations.  Since seeking the other party's performance does not constitute a breach of contract, plaintiffs' argument must fail.

Perhaps recognizing as much, plaintiffs have pled nine other theories based on the same alleged charge in a scattershot attempt to find *some* viable theory of

---

[1]     Plaintiffs named CitiFinancial Mortgage Co., Inc. as defendant in this case. CitiMortgage acquired CitiFinancial Mortgage Co., Inc. on July 1, 2006. *See* n. 19, *infra.*

liability. None of these ancillary theories, however, fares any better. Each theory is insufficiently pled under the applicable federal rules, and most of them are also either affirmatively barred or fall outside the scope of the statutes they seek to invoke.

The complaint is also littered with bare-bones references to other charges and fees that the plaintiffs allege were extracontractually or illegally imposed. The plaintiffs, however, have pled no facts whatsoever in support of any cause of action based on any charge or fee besides the alleged $5,147 charge in the modification agreement. As a result, the complaint fails to state a valid claim for relief on any theory for any fee.

The sparse factual allegations of the complaint are as follows: The plaintiffs signed a note and mortgage in 1995. Compl. ¶ 12. At one time, CitiMortgage initiated a foreclosure action (*see id.* ¶ 13), and plaintiffs subsequently "requested" and "received" "a loan modification agreement," *id.* ¶¶ 14-16. That modification agreement included certain charges. *Id.* ¶ 17. Plaintiffs paid their mortgage in full in May 2007. *See id.* ¶ 18.

## STANDARD OF REVIEW

In order to survive a motion to dismiss, a complaint must satisfy the pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure. To do so, the Complaint must include more than "labels and conclusions" or "a formulaic

recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Instead, the plaintiffs must make "a 'showing,' rather than a blanket assertion, of entitlement to relief," including "[f]actual allegations [that are sufficient] to raise a right to relief above the speculative level." *Id.* at 1965 & n.3. The complaint must, in other words, "provide 'enough factual matter' to suggest that the alleged event took place" (*Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Import & Export Corp.*, 2008 WL 5597656, at *4 (D.N.J. Dec. 30, 2008) (quoting *Twombly*, 127 S. Ct. at 1965)) and to "plausibly suggest that the pleader is entitled to relief," *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 173 n.7 (3d Cir. 2008) (quotation omitted).

Claims of fraud, which are governed by the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, must do more. "In order to satisfy Rule 9(b), plaintiffs must plead with particularity 'the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged.'" *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)) (internal quotation marks omitted). "Plaintiffs may satisfy this requirement by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations." *Id.* at 224 (internal quotation omitted).

In considering whether the plaintiffs have met these standards, the Court "accept[s] all factual allegations in the complaint as true and view[s] them in the light most favorable to the plaintiff." *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (internal citation and quotations omitted). The Court "need not," however, "credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal citation and quotations omitted).

## ARGUMENT

As discussed above, the Complaint attempts to plead ten causes of action. Sections I-V below explain the deficiencies of each in turn, treating the plaintiffs' complaint as based on the alleged charge in the modification agreement. As described in Section VI, the plaintiffs' claims are also preempted in part by federal law. Finally, as discussed in Section VII, the complaint fails to state a cause of action as to any other fees or charges besides the alleged charge for attorney's fees and costs.[2]

---

[2]     In addition to the reasons for dismissal set out below, CitiMortgage believes that the plaintiffs' claims are barred for several other reasons. The Complaint pleads so few facts, however, that it fails to disclose whether these additional defenses are applicable. For instance, the voluntary payment doctrine "provides that 'where a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on a demand which is not enforceable against him, he cannot recover it back.'" *In re N.J. State Bd. of Dentistry*, 84 N.J. 582, 587 (1980) (quoting *City of Camden v. Green*, 54 N.J.L. 591, 593 (E & A 1892)). The Complaint, though, does not allege that the plaintiffs ever paid the alleged charge

## I.   THE COMMON LAW CLAIMS MUST BE DISMISSED.

### A.   Plaintiffs Fail to State an Action for Breach of Contract.

"To state a claim for breach of contract under New Jersey Law, a party must set forth allegations showing" the existence of a contract, "a breach of that contract," "damages flowing from [the] breach," and that the plaintiff "performed its obligations in accordance with the contract." *Hanson Eng'g, Inc. v. Ascher*, 2008 WL 1782392, at *2 (D.N.J. Apr. 18, 2008); *accord, e.g., Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002). CitiMortgage does not dispute that there is a valid contract between the parties in the form of a mortgage and note, attached to the declaration of Marc S. Singer as Exhibit 1.[3]  *See* Compl. ¶ 12. The note and mortgage were modified by a written

---

in the modification agreement or any other specific fee or charge, as opposed to the entire balance of the loan (*see* Compl. ¶ 18)—which may or may not include particular fees.  Nonetheless, to the extent that the plaintiffs intended to allege that they paid the charges in the modification agreement that they now contest, their claims are barred by the voluntary payment doctrine.  Similarly, the modification agreement expressly released CitiMortgage from any and all claims that "relat[e] to the Note and the Security Instrument" that were incurred "prior to the date" the parties signed the modification (Ex. 2, at 5)—but the Complaint is silent as to when any contested fees were originally incurred.

[3]      Although the plaintiffs did not attach the mortgage and note to the Complaint, "the complaint [is] based on the contract," and this Court may therefore "consider the document on a motion to dismiss."  *Marracco v. Kuder*, 2008 WL 4192064, at *5 (D.N.J. Sept. 9, 2008) (Hillman, J.); *see also, e.g., Dykes v. S.E. Pa. Transp. Auth.*, 68 F.3d 1564, 1567 n.3 (3d Cir. 1995) (allowing the defendant to introduce a collective bargaining agreement relied on by the complaint).  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."

agreement dated April 21 2006, and attached to the declaration of Marc S. Singer as Exhibit 2. *See also* Compl. ¶¶ 14-15. Plaintiffs, however, do not sufficiently allege either a breach or damages.

### 1.    Plaintiffs Have Not Alleged, and Cannot Allege, a Breach.

At the plaintiffs' request, the parties modified the note and mortgage at issue here in April 2006, via a written "Loan Modification Agreement" that expressly "amend[ed] and supplement[ed]" the original agreement between the parties. *See* Ex. 2; Compl. ¶ 14. As part of the modification agreement, the plaintiffs agreed to pay CitiMortgage a total of $5,148.30 in "[a]ppraisal fees, attorneys fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims," either as part of the principal of the mortgage or as "[a]dditional [a]mounts [o]wed." Ex. 2, at 2-3.

Plaintiffs now allege that $5,147 of the $5,148.30 charged in the modification agreement consisted of attorney's fees and costs, and they challenge this amount as a breach of contract. Their claim fails, however, because these charges are expressly included in the terms of the Loan Modification Agreement. Contractual modifications are "limited changes or amendments to a contract" that may be accomplished, as in this case, "by an explicit agreement to modify."

---

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (considering a contract not attached to the complaint without converting the motion to dismiss into a motion for summary judgment).

*County of Morris v. Fauver*, 153 N.J. 80, 99 (1988). The terms in the modification become part of the contract, and the modification may "'cancel[]'" parts of the preexisting contract, but "'the general purpose and effect'" of the original agreement are "'undisturbed.'" *Chi. Five Portfolio, LLC v. Director, Div. of Taxation*, 2008 WL 5539674, at *6 (N.J. Tax Ct. Dec. 11, 2008) (quoting *Int'l Bus. Lists, Inc. v. AT&T Co.*, 147 F.3d 636, 641 (7th Cir. 1998)). Here, the modification agreement expressly lists charges for items including attorney's fees and costs. *See* Ex. 2, at 2-3. Thus, taking the facts alleged in the Complaint as true, the fees plaintiffs contest are express terms of the contract—that is, plaintiffs contractually agreed to pay the very fees they now seek to paint as a breach.

A breach of contract, however, arises from "non-performance" of contractual duties or from "repudiation" of the agreement (Restatement (Second) of Contracts, § 236, cmt. a)—not from a request by one party that the other party fulfill its contractual obligations. Moreover, while the contract does generally limit attorney's fees to "reasonable" amounts (*see* Ex. 1, at 1), the parties specifically amended the contract to require plaintiffs to pay the $5,148.30. As such, the charges cannot represent a breach of contract even assuming that they represent an unreasonable amount. *See Unalachtigo Band of Nanticoke-Lenni Lenape Nation v. State*, 375 N.J. Super. 330, 345 (App. Div. 2005) (noting that a modified agreement "in effect rescinded the conflicting provisions" of the prior contract).

Plaintiffs thus cannot allege a breach of contract on the basis of any charge in the modification agreement.[4]

## 2.    Plaintiffs Have Not Alleged Cognizable Damages.

Just as they fail to allege a colorable breach, plaintiffs fail to sufficiently allege damages. Nothing pertinent to the individual plaintiffs' breach of contract claim states that the plaintiffs suffered any damages. *See* Compl. ¶¶ 12-19, 36-41. While several subsequent counts of the complaint do mention damages, even those do so in an entirely conclusory fashion. *See id.* ¶ 46 ("Plaintiffs . . . have suffered damages"), ¶ 56 ("Plaintiffs . . . have suffered loss"), ¶ 79 ("Plaintiffs have been injured").[5] Conclusory allegations of this kind do not state a viable claim for relief. *See, e.g., Chemtech Int'l, Inc. v. Chem. Injection Tech, Inc.*, 170 F. App'x 805, 808 (3d Cir. 2006); *Hyman v. WM Fin. Servs., Inc.*, 2008 WL 1924879, at *3 (D.N.J. Apr. 29, 2008) (dismissing a count that was "little more than a recitation of the

---

[4]    The breach of contract count also claims that CitiMortgage's actions violate other "applicable law," without specifying what laws were allegedly violated. Compl. ¶ 38. An allegation that conduct is illegal, however, cannot ground an action for breach of contract, because "[c]ontractual agreements to comply with preexisting legal duties are unenforceable for lack of consideration." *Hyman v. WM Fin. Servs., Inc.*, 2008 WL 1924879, at *3 (D.N.J. Apr. 29, 2008). The claim that CitiMortgage "failed to disclose in advance . . . the amount of any fees or costs" (Compl. ¶ 39) is similarly unavailing, both because the contract contains no disclosure requirements (*see* Ex. 1) and because the alleged charge is apparent on the face of the modification agreement (*see* Ex. 2, at 2-3).

[5]    Paragraph 74 alleges "an ascertainable loss of at least $4000 based on . . . $4000 of attorneys fees" but fails to give any indication of where that figure originated or why the plaintiffs believe that $4,000 in attorney's fees were charged.

elements of a breach of contract claim"); *Zinn v. Seruga*, 2006 WL 2135811, at *9 (D.N.J. July 28, 2006) (dismissing a claim because, *inter alia*, "[p]laintiffs . . . do not specify any damages that resulted from the alleged breach"); *Frederico v. Home Depot, Inc.*, 2006 WL 624901, at *3 (D.N.J. Mar. 10, 2006) ("*Frederico I*") (dismissing a claim where there were no "allegations to support" a claim to damages), *aff'd*, 570 F.3d 188 (3d Cir. 2007).  Count I must be dismissed for this reason as well.

### B.   Plaintiffs Cannot Sustain, and Have Not Properly Pled, a Negligence Claim.

In order to maintain an action for negligence, the complaint must allege a duty flowing from the defendant to the plaintiff, the breach of that duty, proximate causation, and actual damages. *See, e.g.*, *Polzo v. County of Essex*, 195 N.J. 569, 584 (2008).  Here, the plaintiffs allege a nonexistent duty and include only boilerplate legal conclusions in support of the other three elements.  For both reasons, Count Two must be dismissed.

### 1.   CitiMortgage Owed No Tort-Based Duty to the Plaintiffs.

The relationship between CitiMortgage and the plaintiffs was governed by a valid note and mortgage, as modified by the Loan Modification Agreement. *See* Exs. 1-2; Compl. ¶¶ 12, 14-15.  In New Jersey, it has "long been the law that remedies in tort relating to a breach of contract may not be maintained in addition to those established under the contract itself in the absence of any independent duty

owed by the breaching party to the plaintiff." *Int'l Minerals & Min. Corp. v. Citicorp N.A., Inc.*, 736 F. Supp. 587, 597 (D.N.J. 1990); *see also, e.g., Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 314-318 (2002).   Thus, to state a claim for negligence in the face of the written agreement between the parties, the plaintiffs must identify some extracontractual duty owed to them by CitiMortgage.   The complaint alleges the existence of a duty of care on the grounds that the mortgage was "secured by an interest in [plaintiffs'] family residence" (Compl. ¶ 43), but no such duty exists.

It is well-settled that "'creditor-debtor relationships'" do not generally "'give rise to a fiduciary duty.'"   *Globe Motor Car Co. v. First Fid. Bank, N.A.*, 273 N.J. Super 388, 393 (Law Div. 1993) (quoting *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1988)); *accord Int'l Minerals & Min. Corp.*, 736 F. Supp. at 597.   As New Jersey courts have recognized, it would "be anomalous to require a lender to act as a fiduciary for interests on the opposite sides of the negotiating table." *Id.* (quotation omitted).

This general rule applies with full force to the specific relationship between mortgagors and mortgagees. *See Raynor v. United States*, 604 F. Supp. 205, 207 (D.N.J. 1984) (holding that "plaintiff has failed to establish a prima facie case of negligence," because "[p]laintiff and [defendant] were in a mortgagor-mortgagee relationship, one of contract, not fiduciary"); *Margulies v. Chase Manhattan*

*Mortgage Co.*, 2005 WL 2923580, at \*2-\*3 (N.J. App. Div. Nov. 7, 2005) (rejecting the claim that features of a mortgage gave rise to a fiduciary relationship); *see also Woods Corp. Assocs. v. Signet Star Holdings, Inc.*, 910 F. Supp. 1019, 1033 (D.N.J. 1995) (holding that a mortgagee's "exercise of its . . . contractual rights may not be held to be a breach of some implied duty owed to the mortgagor"). CitiMortgage thus owed the plaintiffs no duty that may serve to ground a negligence claim, and Count II must be dismissed.[6]

## 2.    Negligence Is Insufficiently Pled.

The allegations in the complaint relating to breach, causation, and damages are nothing more than a recitation of the elements of a negligence action. As to breach, plaintiffs state that CitiMortgage acted in ways "far below applicable standards for mortgage loan servicing" and were therefore "negligent," without so much as suggesting *what* the relevant standard is or *how* CitiMortgage failed to meet it. Compl. ¶¶ 44-45. The causation and damages allegations, meanwhile, are encompassed in the single clause "[a]s a direct and proximate result of the negligence listed above Plaintiffs . . . have suffered damages." Compl. ¶ 46. These conclusory statements are nothing more than the "formulaic recitation of the

---

[6]    As the New Jersey Supreme Court has found, the fact that nothing in the parties' relationship gives rise to a duty in tort is reinforced by the fact that there *are* duties clearly "imposed by [New Jersey] law" that arise from bilateral relationships involving actors such as physicians, attorneys, and insurance brokers. *Saltiel*, 170 N.J. at 315-317.

elements of a cause of action" prohibited by *Twombly*. 128 S. Ct. at 1965. The negligence claim would therefore be subject to dismissal even if CitiMortgage owed a duty to the plaintiffs. *See, e.g.*, *Wiltz v. Middlesex County Office of Prosecutor*, 2006 WL 1966654, at *9 (D.N.J. July 12, 2006) (dismissing a claim stating merely that the defendant "'acted negligently'").

### C.   The Complaint Does Not State a Claim for Breach of the Duty of Good Faith and Fair Dealing.

Count Three attempts to state a claim for breach of the implied duty of good faith and fair dealing. To maintain this cause of action, the plaintiffs must "allege that the defendant's conduct destroyed plaintiff's reasonable expectations and right to receive the fruits of the contract." *Cryofab, Inc. v. Precision Med., Inc.*, 2008 WL 2705007, at *3 (D.N.J. July 8, 2008) (citing *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 418 (1997)). The plaintiff must further plead the existence of "'bad motive or intention'" on the part of CitiMortgage. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 531 (D.N.J. 2008) (quoting *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001)).

The relevant allegations in the Complaint are entirely conclusory. Plaintiffs aver nothing more than that the "duty of good faith and fair dealing" exists in New Jersey, that CitiMortgage "breached said duty," and that "[p]laintiffs . . . are entitled to relief." Compl. ¶¶ 48-50. Absent allegations "identifying the duties, and referencing . . . how [CitiMortgage] breached these duties," such "conclusory

12

allegations . . . are insufficient to state a claim." *Pathfinder Mgmt., Inc. v. Mayne Pharma PTY*, 2008 WL 3192563, at *18 (D.N.J. Aug. 5, 2008); *see also Barrows v. Chase Manhattan Mortgage Corp.*, 465 F. Supp. 2d 347, 366 (D.N.J. 2006) (Hillman, J.) (declining to dismiss a breach of good faith claim *sua sponte* where the plaintiffs, unlike the current complaint, had specified the duty allegedly violated).

The complaint is also silent as to how the plaintiffs were deprived of the fruits of the contract or how their expectations were destroyed, and it is equally mute concerning any "bad motive or intention." These deficiencies are not mere failures to "use[] the words 'specific bad motive' or 'intention to injure.'" *Akshayraj, Inc. v. Getty Petroleum Marketing, Inc.*, 2007 WL 708852, at *7 (D.N.J. Mar. 6, 2007) (Hillman, J.). Rather, there is a complete absence of pleadings on either point; the cause of action therefore must be dismissed. *See, e.g., Cambridge Mgmt. Group v. Robert A. Kosseff & Assocs.*, 2007 WL 2084895, at *4 (D.N.J. July 18, 2007) (dismissing a good faith and fair dealing claim as duplicative of a breach of contract claim where the two claims were based on the same conduct and no intent was alleged).

### D.    The Unjust Enrichment Claim is Barred and Fails to Meet *Twombly*'s Pleading Standard.

Count IV of the complaint attempts to assert an unjust enrichment claim. *See* Compl. ¶¶ 51-57.   This claim is both barred as a matter of law and insufficiently pled.

### 1.    Unjust Enrichment Is Precluded by the Existence of a Valid Contract.

A cause of action for unjust enrichment may not "be had when a valid, unrescinded contract governs the rights of the parties." *Van Orman v. Am. Co.*, 680 F.2d 301, 310 (3d Cir. 1982); *accord, e.g.*, *Premier Pork LLC v. Westin, Inc.*, 2008 WL 724352, at *14 (D.N.J. Mar. 17, 2008) (citing cases); *Corestar Int'l Pte. Ltd. v. LPB Commc'ns, Inc.*, 513 F. Supp. 2d 107, 127 (D.N.J. 2007) (Hillman, J.); *Shapiro v. Solomon*, 42 N.J. Super. 377, 383-384 (App. Div. 1956); *Nat'l Amusements, Inc. v. N.J. Turnpike Auth.*, 261 N.J. Super 468, 478 (Law Div. 1992).   Courts impose this bar because unjust enrichment claims sound in "implied contract" (*D.R. Horton Inc. v. Dynastar Dev., LLC*, 2005 WL 1939778, at *18 (N.J. Super. Ct. Aug. 10, 2005)), and "'[i]t is a well settled rule that an express contract excludes an implied one,'" *C.B. Snyder Realty Co. v. Nat'l Newark & Essex Banking Co.*, 14 N.J. 146, 162 (1953) (quoting *Moser v. Milner Hotels, Inc.*, 6 N.J. 278, 280-281 (1951)) (internal quotation omitted).   Thus, "where it appears that there is in fact a legally subsisting express contract the law will not imply an

14

agreement concerning the same subject matter." *D.R. Horton, Inc.*, 2005 WL 1939778, at *18 (internal citation and quotation omitted).

Here, of course, a valid contract governs the rights of the parties. In fact, the unjust enrichment claim is expressly based on the same allegations as the breach of contract claim. Both counts purport to state claims to relief based on the "collect[ion of] monies that are not due and owing" under the "contract or . . . applicable law." Compl. ¶¶ 38, 53. By the very terms of the complaint, then, the contract action and the unjust enrichment count concern precisely "the same subject-matter" (*D.R. Horton, Inc.*, 2005 WL 1939778, at *18 (quotation omitted)), and the unjust enrichment claim must therefore be dismissed.

### 2. The Complaint Fails to Put CitiMortgage on Notice of the Basis of the Claim.

Even if plaintiffs could potentially state a cause of action for unjust enrichment, the complaint fails to do so. An unjust enrichment claim has "two basic elements": "The plaintiff must 'show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *D.R. Horton Inc.*, 2005 WL 1939778, at *18 (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)). Here, however, the plaintiffs have failed to put CitiMortgage on notice of what benefit it has received. The unjust enrichment count alleges that CitiMortgage "collected monies that are not due and owing," without so much as hinting at the extent or nature of any alleged overcharge. Rather, the Complaint

only includes the free-floating assertion that somewhere, somehow CitiMortgage collected some unspecified amount of money to which it was not entitled. This does not even approach "a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 127 S. Ct. at 1965.[7]

## II.     THE CONSUMER FRAUD ACT CLAIMS MUST BE DISMISSED.

Counts V through VIII of the complaint attempt to state claims that CitiMortgage violated New Jersey's Consumer Fraud Act ("CFA"). These counts, which sound in fraud, are insufficiently pled and are barred by the economic loss doctrine. Insofar as the CFA claims attempt to leverage violations of certain other statutes into violations of the CFA, they are additionally precluded, both because the predicate statutes provide no private right of action and for statute-specific reasons.

### A.     The CFA Claims Sound in Fraud.

"To state a claim under the [CFA], a plaintiff" generally "must allege: '(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct

---

[7]      The unjust enrichment count of the complaint also mentions the doctrines of "money had & received[] and constructive trust." Compl. ¶ 54. Insofar as plaintiffs intend to plead either of these claims, however, the complaint is wholly inadequate. "[S]imply using [a] phrase" imparting the name of a cause of action "does not provide sufficient basis for a claim," because "the plaintiff at a minimum must provide the defendant with some kind of notice of what conduct underlies the cause of action." *Connolly v. Mitsui O.S.K. Lines (Am.), Inc.*, 2007 WL 4207836, at *10 (D.N.J. Nov. 21, 2007).

and the plaintiffs' ascertainable loss.'" *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, 2008 WL 5381227, at *5 (quoting *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) ("*Frederico II*")).  An unlawful act under the statute is one that is "an[] unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact." N.J. Stat. 56:8-2.

"The capacity to mislead is the prime ingredient of all types of consumer fraud." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994) (internal citation omitted).  *A fortiori*, "[t]he capacity to mislead is the prime ingredient of . . . an unconscionable commercial practice." *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 N.J. Super. 11, 22 (App. Div. 1985); *accord, e.g., Fenwick v. Kay Am. Jeep, Inc.*, 72 N.J. 372, 378 (1977).  In fact, under the CFA, "the concept[s] of fraud and unconscionability are interchangeable"—"unconscionability must be equated with the concepts of deception, fraud, false pretense, misrepresentation, concealment and the like." *Kugler v. Romain*, 58 N.J. 522, 544 (1971).  Thus, although the various types of "unlawful actions" specified in the statute give rise to separate causes of action (*see Cox*, 138 N.J. at 17), allegations of any unlawful act brought pursuant to the CFA implicate fraud.  Two consequences immediately follow: CFA claims must meet the heightened pleading standard of Rule 9(b) of the

17

Federal Rules of Civil Procedure, and the plaintiffs' claims fall within the ambit of the economic loss doctrine.

### B.     The CFA Counts Are Insufficiently Pled.

Every claim of a CFA violation must meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *See, e.g., Frederico II*, 507 F.3d at 203 (holding that the plaintiff "failed to sufficiently allege an unlawful practice with requisite specificity"); *FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (rejecting CFA claims that were not pled with particularity); *Rait v. Sears, Roebuck & Co.*, 2009 WL 250309, at *4 (D.N.J. Feb. 3, 2009) (holding, in the context of claims including the charging of excessive fees, that "to adequately state a claim under the CFA . . . allegations must be plead with particularity under Rule 9(b)"); *Kalow & Springnut, LLP v. Commence Corp.*, 2009 WL 44748, at *3 (D.N.J. Jan. 6, 2009) ("[T]he pleading requirements of Rule 9(b) apply to . . . NJCFA claims . . . .") (internal citation and quotation omitted); *Torres-Hernandez*, 2008 WL 5381227, at *6 ("[The] heightened pleading standard applies to all three prongs of [a CFA] claim.") (internal citation omitted); *Pacholec v. Home Depot USA*, 2006 WL 2792788, at *2 (D.N.J. Sept. 26, 2006) (holding that Rule 9(b) applied to a CFA claim in a case in which the plaintiff also alleged unconscionability under the Uniform Commercial Code based on the same conduct by the defendant).  As noted above, to satisfy Rule 9(b), plaintiffs must "plead[]

the date, place or time of the fraud," or use "alternative means of injecting precision and some measure of substantiation into [their] allegations." *Lum*, 361 F.3d at 224.[8]

### 1.    Counts V Through VIII Are Not Pled with Particularity.

The CFA counts in the complaint are in no way precise.  Count V, for instance, is premised in large part on supposed misrepresentations "that fees assessed and collected . . . were . . . allowed under[] the mortgage contract and . . . permitted by law."  Compl. ¶ 59.  Nothing in the complaint, however, gives any indication of what particular misrepresentations were allegedly made, when they were made, or how they were made—allegations that are necessary to state a claim.  *See, e.g.*, *Lum*, 361 F.3d at 224; *Torres-Hernandez*, 2008 WL 5381227, at *6.

Count V also advances the naked conclusion that CitiMortgage "improperly assessed and collected . . . fees," and Counts VI and VII likewise allege overcharges of "costs and attorneys fees" (Compl. ¶¶ 60, 65, 69), but these counts also fail to state when the fees being challenged were imposed or what amounts are

---

[8]    *Payne v. Fujifilm U.S.A., Inc.*, 2007 WL 4591281, at *10 (D.N.J. Dec. 28, 2007), refused to apply Rule 9(b) to unconscionability claims under the CFA.  That case, however, is outweighed by the numerous cases requiring CFA claims to be pled with particularity.  *Payne* also overlooks the New Jersey courts' equation of unconscionability with deception and fraud.  Given that unconscionable practices under the CFA are a type of fraud and that Rule 9(b) covers "*all* averments of fraud or mistake," that Rule must be applied here. Fed. R. Civ. P. 9(b) (emphasis added).

at issue. Count VIII asserts that the plaintiffs were overcharged $4,000 for attorneys' fees (*see id.* ¶ 74), and refers the reader to "charges . . . outlined previously" (*id.* ¶ 73), but it fails to state when, why, or how any contested charge was imposed.

In short, rather than state "factual allegations that would, if true," establish the elements of the cause of action (*Kalow & Springnut, LLP v. Commence Corp.*, 2008 WL 2557506, at *6 (D.N.J. June 23, 2008) (quoting *Dewey*, 558 F. Supp. 2d at 526)), all four CFA counts are instead almost uniformly composed of legal conclusions, *see* Compl. ¶¶ 59-62, 64-66, 69-70, 73, 75. Legal conclusions of this sort, however, do not meet the standard of Rule 9(b). *See Kalow & Springnut*, 2008 WL 2557506, at *6; *see also, e.g., Rait*, 2009 WL 250309, at *4 (dismissing a claim that included "broad legal conclusions" but lacked "specific factual averments"); *Parker v. Howmedica Osteonics Corp.*, 2008 WL 141628, at *3 (D.N.J. Jan. 14, 2008) (dismissing a CFA claim that "amount[ed] to nothing more than legal conclusions cloaked in the guise of factual allegations"). Each of the CFA claims must therefore be dismissed.

### 2.   Plaintiffs Completely Fail to Allege an Ascertainable Loss or the Necessary Aggravating Circumstances.

The CFA counts also fail to state a claim because the plaintiffs fail to state two required elements. First, plaintiffs "must," but do not, "plead a specific ascertainable loss." *Torres-Hernandez*, 2008 WL 5381227, at *7 n.3. An

ascertainable loss is one that is "definite, certain and measurable." *Bosland v. Warnock Dodge Inc.*, 197 N.J. 543, 558 (2009). The loss therefore must be pled with at least the degree of particularity required "to give the defendant notice of possible damages." *Torres-Hernandez*, 2008 WL 5381227, at *7 n.3 (citing *Seville Ind. Corp.*, 742 F.2d at 791). Counts V, VI, and VII, by contrast, do not state any amount that is allegedly at issue. While Count VIII states the legal conclusion that plaintiffs lost at least $4,000 in attorney's fees, it fails to "plead specific *facts* setting forth and defining the ascertainable loss suffered." *Solo v. Bed Bath & Beyond, Inc.*, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (citing *Cox*, 138 N.J. at 21). It also fails to give any value to the "other charges" it mentions. Compl. ¶ 74. This alone is sufficient to require dismissal of the CFA counts. *See, e.g., Koronthaly v. L'Oreal USA, Inc.*, 2008 WL 2938045, at *6 (D.N.J. July 29, 2008) (dismissing a complaint where no loss was pled); *Parker*, 2008 WL 141628, at *4 (dismissing a CFA claim that only "offer[ed] broad and conclusory allegations" of loss) (internal quotation and citation omitted); *Solo*, 2007 WL 1237825, at *3.

Second, where plaintiffs attempt to bring both CFA claims and breach of contract claims, and "the facts that support the plaintiffs' [contract and CFA] theories are . . . identical," the plaintiffs must plead "substantial aggravating circumstances" in order to maintain the CFA claims. *Cox*, 138 N.J. at 18. The

rationale for this rule is straightforward: "[T]he law permits [a non-breaching] party [to a contract] to recoup remedial damages in an action on the contract; however, by providing that a court should treble those damages and should award attorneys' fees and costs, the Legislature must have intended that substantial aggravating circumstances be present in addition to the breach." *Id.* (internal citation omitted). Thus, to show that a defendant committed an unlawful act prohibited by the CFA, "plaintiff[s] must demonstrate that the business behavior in question 'stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer.'" *Rait*, 2009 WL 250309, at \*3 (quoting *Turf Lawnmower Repaid, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416 (1995)). The aggravating circumstances must, of course, be pled with specificity pursuant to Rule 9(b). *Parker*, 2008 WL 141628, at \*3.

Here, Counts VI, VII, and VIII, as well as part of Count V, are based on precisely the same conduct as the breach of contract claim. All of these counts can only refer to the charges in the modification agreement, because the complaint contains no assertion that any other specific charge imposed on the plaintiffs was unwarranted. The plaintiffs are therefore required to plead aggravating circumstances, but they have not done so. Instead, they only allege that they were overcharged fees. But an alleged overcharge is no more a *per se* violation of the CFA than is a breach of contract. *See Gross v. TJH Auto. Co.*, 380 N.J. Super 176,

186-189 (App. Div. 2005) (holding that a "messenger fee" that the plaintiff claimed was seventeen times the cost incurred by the defendant was not unconscionable). The fact that the alleged breach of contract is an overcharge therefore does not, without more, state aggravating circumstances. As such, the plaintiffs have failed to plead any unlawful conduct under the CFA, and their claims must be dismissed.

### C.   The Claims Are Barred by the Economic Loss Doctrine.

"In general, the economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which they are entitled only by contract." *Vukovich v. Haifa, Inc.*, 2007 WL 655597, at *7 (D.N.J. Feb. 27, 2007) (internal citation omitted). In New Jersey, the doctrine applies to claims under the CFA as well as to claims of common-law fraud. *See Traverso v. Home Depot USA, Inc.*, 2007 WL 3124698, at *2-*3 (D.N.J. Oct. 23, 2007) (dismissing a fraud in the performance claim under the CFA); *Vukovich*, 2007 WL 655597, at *7-*9 (applying the same analysis to CFA and common-law allegations). Specifically, the rule bars any fraud claims that concern "fraud in the performance of a contract" as opposed to "fraud in the inducement." *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 563 (D.N.J. 2002). In determining whether the rule applies to a specific fraud allegation, "the 'critical issue' . . . 'is whether the allegedly tortious conduct is extraneous to the contract.'" *Id.* at 564 (quoting

*Emerson Radio Corp. v. Orion Sales, Inc.*, 2000 WL 49361, at *7 (D.N.J. Jan. 10, 2000)).

Here, the plaintiffs' claims concern CitiMortgage's performance.   As discussed above, the charge plaintiffs contest is a term of the parties' contract and thus not "extraneous to" that agreement.   *See* Section I.A.1, *supra*.   But even assuming *arguendo* that plaintiffs could state a claim for breach of contract, their claim would be that CitiMortgage "imposed or collected amounts that are not due and owing by contract."   Compl. ¶ 38.   Such a claim would be for the failure to comply with an existing contract, not for fraudulent inducement, and there are, in fact, no allegations in the complaint that challenge any pre-contractual actions by CitiMortgage.   The CFA claims are therefore barred by the economic loss doctrine.[9]

### D.      The Violations of Other Statutes Plaintiffs Allege Cannot Support Liability Under the CFA.

Counts V, VI, and VII attempt to allege CFA violations based on violations of the Federal Trade Commission Act ("FTCA"), the state Fair Foreclosure Act ("FFA"), and New Jersey Court Rules 4:42-9(a)(4) and 4:42-10(a), which govern awards of attorney's fees and costs in foreclosure actions ("the Rules").   Count

---

[9]      Similarly, CFA challenges relating to interest or any other attorney's fees, both of which are governed by express contractual provisions, would be precluded by the economic loss rule.

VIII also relies on "violations of rules, regulations, and statutes" (Compl. ¶ 73), an allegation that presumably relates back to the other three CFA counts.

The plaintiffs' theory appears to be that, if they can prove violations of the FTCA, FFA, or Rules, CitiMortgage would automatically be subject to liability under the CFA. *See* Compl. ¶ 73 (alleging that the "violations of rules, regulations, and statutes" make "Defendant . . . strictly liable under the [CFA]"). That conclusion is plainly incorrect. "To violate the CFA, a person must commit an 'unlawful practice' as defined in the legislation. Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Cox*, 138 N.J. at 17. Strict liability is imposed under the CFA only for the third category of violations—that is, for violations of "regulations promulgated under the Act." *Id*. Otherwise, the plaintiffs must demonstrate that the practice is unconscionable. *See id.*

Here, the plaintiffs allege no violations of any regulation promulgated pursuant to the CFA. In fact, they cannot do so, as there is no regulation issued under the CFA covering the fees charged by mortgage lenders and servicers. There is thus no strict liability for the statutory and rule violations pled in the complaint. *See Nickerson v. Quaker Group*, 2008 WL 2600720, at *13 (N.J. App. Div. July 3, 2008) (per curiam) (holding that violations of the construction code,

which was not promulgated pursuant to the CFA, are not per se "unlawful" for purposes of the CFA).

The problems with the CFA claims predicated on other statutes, however, run deeper than a misunderstanding of that statute's liability regime. Each is barred as a matter of law.

### 1.    The Statutes Do Not Provide for Private Rights of Action.

The plaintiffs may not premise CFA violations on the basis of alleged FTCA, FFA, and Rule violations. Their attempt to shoehorn these causes of action into the CFA undoubtedly stems from the fact that the underlying statutes and rules do not provide for private rights of action. *See, e.g.*, *Whittingham v. Amended Mortgage Elec. Registration Servs., Inc.*, 2007 WL 1456196, at *5-*6 (D.N.J. May 15, 2007) (holding that there is no private right of action under either the FFA or the Rules); *Waldo v. N. Am. Van Lines, Inc.*, 669 F. Supp. 722, 726 (W.D. Pa. 1987) ("[S]ection 5 of the [FTCA] . . . does not provide for a private right of action.").

What plaintiffs may not accomplish directly, however, they may also not accomplish indirectly through the CFA. The New Jersey Supreme Court has squarely rejected a CFA claim premised on the state antitrust statute on precisely these grounds: "Plaintiffs suggest that [their] factual allegations . . . can support a claim . . . through use of the [CFA] where the Legislature has specifically rejected

such a cause of action under the Antitrust Act.  [P]laintiffs ask us to accomplish by

judicial analysis of the [CFA] a result which our Legislature has expressly rejected.

We decline to do so." *Wilson v. Gen. Motors Corp.*, 190 N.J. 336, 340 (2007).[10]

Several other courts have reached the same conclusion. *See Helena Chem. Co. v.*

*Nelson*, 2000 WL 963911, at *9 (D.N.J. June 22, 2000) (rejecting a CFA claim

because "[t]he statutes cited do not provide for private enforcement" and because

no prior case had held "that violation of the[] statutes constitutes an

unconscionable business practice"); *Henderson v. Hertz Corp.*, 2005 WL 4127090,

at *5-*6 (N.J. App. Div. June 22, 2006) (disallowing a CFA action because

plaintiff sought "to create a private right of action" where none existed); *see also*

*Benson v. Kwikset Corp.*, 2002 WL 34396029, at 3 (Cal. Super. Ct. May 23, 2002)

(noting that no California state court had ever allowed a state Unfair Competition

Law action to proceed solely on the basis of statutes that "expressly prohibited a

private right of action" or had been expressly interpreted "not [to] imply a private

right of action"), *vacated in part on other grounds*, 62 Cal. Rptr. 3d 284 (Ct. App.

2007).

Thus, plaintiffs may not reach alleged violations of the FTCA, FFA, or

Rules through the back door of the CFA, and Counts V, VI, and VII must be

---

[10]    While the *Wilson* court did not address allegations that otherwise stated a
clear CFA claim (*see* 190 N.J. at 341), the instant complaint also fails to state an
otherwise-cognizable CFA claim, *see* Section II.B, *supra*.

dismissed, as must Count VIII to the extent that it is premised on the violations alleged in the other CFA counts.  Even if they could do so, however, plaintiffs have failed to state cognizable claims under any of the three theories.

### 2.    Private Plaintiffs May Not Attempt to Enforce the FTCA.

Count V alleges that CitiMortgage violated the CFA by acting in "unfair and deceptive" ways that "affect[] commerce in violation of Section 5(a) of the [FTCA], 15 U.S.C. § 45(a)."  Compl. ¶ 62.  As noted above, the statute provides for no private cause of action.  The bar on private relief under the FTCA goes beyond the mere inability to file suit, however.  Rather, any and all private enforcement of the act is barred, because the FTC's power to enforce the statute is exclusive.  *See, e.g.*, *Moore v. N.Y. Cotton Exchange*, 270 U.S. 593, 603 (1926) ("put[ting] aside" a claim of "unfair methods of competition . . . at once, since relief in such cases under the [FTCA] must be afforded in the first instance by the commission"); *Alfred Dunhill Ltd. v. Interstate Cigar Co., Inc.*, 499 F.2d 232, 237 (2d Cir. 1974) ("[T]he provisions of the [FTCA] may be enforced only by the [FTC].  Nowhere does the Act bestow upon either competitors or consumers standing to enforce its provisions."); *Waldo*, 669 F. Supp. at 726 ("'A fair reading of the statute and its legislative history evinces a plain intent by Congress to make the administrative program for enforcing the [FTCA] an exclusive one.'") (quoting *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 1002 (D.C. Cir. 1973)); *see also,*

*e.g.*, *id.* at 997-99 (discussing "various problems" that would follow from private enforcement of the FTCA).

Here, plaintiffs are attempting to use the CFA in order to enforce the FTCA. Any doubt about their goal is removed by Paragraph 61 of the complaint, which alleges that "[t]he actions of Defendant have caused and are likely to cause substantial injury" that "is not reasonably avoidable" and "not outweighed by countervailing benefits." This language mimics the requirements of 15 U.S.C. § 45(n), which prohibits the FTC from bringing an action under the section in the absence of the elements that plaintiffs cite. *See also, e.g.*, *FTC v. NorVergence, Inc.*, 2005 WL 3754864, at *3 (D.N.J. July 22, 2005) (reciting these elements). The claim is therefore barred by the FTC's exclusive authority to enforce the FTCA. *See Benson*, 2002 WL 34396029 ("[p]ermitting a violation of the FTC Act to constitute the predicate for a [California UCL violation] would constitute an end-run around the bar to private enforcement").

### 3. The Fair Foreclosure Act Does Not Apply.

Count VI alleges that CitiMortgage violated the CFA by charging more attorney's fees and costs to the plaintiff than permitted by the FFA, as codified at N.J. Stat. 2A:50-57(b)(3). *See* Compl. ¶¶ 64-65. Although the count does not state the particular charges at issue, this claim presumably relates to the $5,147 that

plaintiffs state was charged as part of the loan modification agreement.  *See*

Compl. ¶¶ 16-18.  No other specific overcharge is alleged in the complaint.

The FFA, however, does not apply to charges made pursuant to loan

modifications or amendments.  By its express terms, the FFA "shall not apply . . .

to the collection of the [mortgage] obligation ***by means other than enforcing the***

***lender's lien on the residential property.***"  N.J. Stat. 2A:50-62 (emphasis added);

*see also* N.J. Foreclosure L. & Prac. Ch. 2, § 2-02 (2008) (stating that the FFA

does not apply "to any . . . means of collecting on a mortgage obligation" except

via foreclosure).  The complaint, however, states that CitiMortgage charged the

plaintiffs fees and costs as part of a "loan modification agreement."  Compl. ¶¶ 14-

17.  The modification agreement confirms that a similar amount in various fees

was charged pursuant to its terms.  *See* Ex. 2, at 2-3.  Since a modification

agreement is a "means other than enforcing the lender's lien,"[11] the FFA simply

does not apply.

Even if the FFA could apply to fees charged pursuant to a modification

agreement in the abstract, it would nonetheless not apply here.  The section of the

FFA that plaintiffs cite gives debtors the right to cure a foreclosure by paying "all

sums which would have been due in the absence of default," "all contractual late

---

[11]    Plaintiffs' contention that CitiMortgage once filed a foreclosure action
(Compl. ¶ 13) is not to the contrary.  Nothing in the complaint or the modification
agreement suggests that it was imposed as a "means [to] enforce the lender's lien."
Rather, the amendment was requested by plaintiffs themselves. *Id.* ¶ 14.

charges," and the costs and attorney's fees specified by the statute. N.J. Stat. 2A:50-57(b)(1), (3), & (4). Thus, the limitation on fees in the statute applies when the debtors cure a default through the payment of a lump sum to the mortgagee. *See, e.g.*, *In re Lipscomb*, 2006 WL 4452988, at * 5 n.11 (Bankr. D. N.J. May 17, 2006) ("The [FFA] limits the amount of attorneys' fees to be paid by a mortgagor who is curing a mortgage default . . . .") (internal citation omitted); *cf. Barrows*, 465 F. Supp. 2d at 363 (dismissing an FFA claim where "[t]he foreclosure action [was] resolved, and Plaintiff did not have to pay any attorneys' fees and costs"). Plaintiffs, however, never allege that they paid any amount to CitiMortgage to cure the mortgage at the time they signed the modification agreement. Nor does the agreement itself reflect any such payment. Thus, nothing in the complaint even begins to suggest that plaintiffs invoked the FFA's cure procedure. Accordingly, even taking all facts in the complaint as true, plaintiffs have not alleged a violation of the FFA. *A fortiori*, they cannot prevail on the claim that CitiMortgage violated the CFA because it violated the FFA, and Count VI must be dismissed.

### 4.   Plaintiffs Cannot State a Claim Under State Court Rules.

Plaintiffs next aver, again presumably in reference to the alleged modification agreement charge, that CitiMortgage's "charges for costs and attorneys fees . . . were in excess of the amount allowed by the New Jersey court

31

rules[,] including . . . R. 4:42-9(a)(4) and R 4:42-10(a)."  Compl. ¶ 69.[12]  Rule

4:42-9 carves out an exception to the general rule that parties are to pay their own

attorney's fees in all judicial actions.  *See, e.g.*, *Smiriglio v. Hudson United Bank*,

98 F. App'x 914, 915 (3d Cir. 2004); *Regency Sav. Bank v. Morristown Mews*,

*L.P.*, 363 N.J. Super 363, 366 (App. Div. 2003).  Subsection (a)(4) discusses the

allowable amount of fees that a mortgagee may receive from the court in an action

to foreclose a mortgage.  N.J. R. 4:42-9(a)(4).  Similarly, Rule 4:42-10(a) provides

that "the court or the clerk may" award certain amounts for title search fees and

costs "[i]n an action for the foreclosure of a mortgage."

    Plaintiffs do not state any claim for the violation of these rules, however,

because they do not allege that CitiMortgage has charged fees in connection with a

mortgage foreclosure action.  As the Third Circuit has held, when the plaintiffs

come to an alternative arrangement to repay a mortgage, the Rules are

inapplicable, because "an action for the foreclosure of a mortgage" is not involved.

*Smiriglio*, 98 F. App'x at 916; *see also id.* at 917 (suggesting that the Rule should

"be read literally"); *see also, e.g.*, *Bergen Builders, Inc. v. Horizon Developers*,

*Inc.*, 44 N.J. 435, 438 (1965) (holding that, while a predecessor to Rule 4:42-

9(a)(4) might be relevant for determining the reasonableness of fees charged, the

---

[12]    The Complaint mysteriously asserts that the fees violated rules "including but not limited to" those specified above.  This is patently insufficient to put CitiMortgage on notice that plaintiffs claim any violations of other rules.

rule was "by its terms confined to foreclosures"). There is thus no basis for a claim under the Rules in this case.

In any event, the Rules by their terms speak to what a court may award, not to what a mortgage lender may charge. *See* N.J. R. 4:42-9(a) (stating that "[n]o fee for legal services shall be allowed in the taxed costs or otherwise" with exceptions for certain "[a]ctions"); N.J. R. 4:42-10(a) (referring to what "the court or the clerk may" charge). The Rules therefore do not even purport to cover conduct outside the courtroom. As no cognizable violation of the Rules was possible under the circumstances, such a violation cannot be leveraged into a claim that defendant violated the CFA, and Count VII must be dismissed.[13]

## III.  COUNT IX FAILS TO GIVE CITIMORTGAGE FAIR NOTICE OF THE CLAIM ASSERTED.

The New Jersey Truth in Consumer Contract, Warranty and Notice Act ("NJTCCA") prohibits creditors from using contracts, "warrant[ies], notice[s], or sign[s]" "that violate[] any clearly established legal right of a consumer or responsibility of a seller." N.J. Stat. 56:12-15. A claim under the NJTCCA, then, has two elements—(1) a contract, warranty, notice or sign that (2) violates a clearly established legal right.

---

[13]   Moreover, while the provision of the FFA limiting attorney's fees and costs in foreclosure actions refers to the Rules (*see* N.J. Stat. 2A:50-57(b)(3)), for the reasons discussed above, the FFA does not apply to the fees as alleged by the plaintiffs.

Count IX fails to put CitiMortgage on notice of any facts underpinning either element.    The Complaint alleges that CitiMortgage issued a "notice includ[ing] illegal and/or excessive charges on the loan." Compl. ¶ 77.  Although Paragraph 77 states that it refers to matters "outlined previously" (*id.*), a "notice" is nowhere mentioned in the earlier parts of the complaint.[14]  Nor does the count so much as mention any "clearly established legal right" the unspecified notice violated.    N.J. Stat. 56:12-15.    Responding to these "blanket assertions of entitlement to relief" (*Twombly*, 127 S. Ct. at 1965 n.3) would require pure guesswork by CitiMortgage, and Count IX must accordingly be dismissed.

## IV.    THE LICENSED LENDERS ACT CLAIM MUST BE DISMISSED.

The complaint next alleges a violation of the provisions of the New Jersey Licensed Lenders Act ("LLA") codified at N.J. Stat. 17:11C-28(a).  Once again, plaintiffs have entirely omitted a critical element of the claim.  Moreover, as with

---

[14]    The complaint refers to three documents—the original note and mortgage and the modification agreement.  The note and mortgage are "written agreement[s] in which" the plaintiffs "borrow[ed] money."  N.J. Stat. 56:12-1.  Pursuant to the definitions in the NJTCCA, they are thus consumer **contracts**.  *See id.*  So, too, is the modification agreement, which is nothing more than an "amend[ment] and supplement[]" to the original note.  Ex. 2, at 1.  The NJTCCA does not define "notice" (*see Barrows*, 465 F. Supp. 2d at 362), but whatever a consumer notice is under the statute, it is not a consumer contract.  To hold otherwise would violate the rule that courts must "give meaning to each word of the statute and to avoid any construction that renders language useless."  *Sahli v. Woodbine Bd. of Educ.*, 193 N.J. 309, 325 (2008) (internal citation omitted).

the FFA, FTCA, and Rules, the relevant provisions of the LLA do not provide for a private right of action.

### A.    Plaintiffs Have Not Alleged the Existence of Prior Liens.

The section of the LLA relied on in the complaint prohibits "secondary lender[s]" from charging certain fees "in connection with a secondary mortgage loan." N.J. Stat. 17:11C-28(a). The statute defines a "secondary mortgage loan" in relevant part as "a loan made to an individual . . . secured in whole or in part by a lien upon any interest in real property . . . *which real property is subject to one or more prior mortgage liens*." N.J. Stat. 17:11C-2 (emphasis added).[15] Thus, to state a claim under this section, the plaintiffs must allege that their property was subject to preexisting mortgage liens. The plaintiffs, however, have not put forth any such allegation. As such, the claim is insufficient as a matter of law and must be dismissed.

### B.    There Is No Private Right of Action.

Count X also fails because the portions of the LLA cited in the complaint do not provide for a private right of action. The complaint seeks the return of "all interest and other charges upon the loan" and claims that Section 17:11C-28(a) provides for such a remedy. Compl. ¶ 84. That provision, however, does no such thing—in fact, the section cited by the Complaint provides for no remedies

---

[15]    There is no parallel provision of the LLA relating to first mortgage loans.

whatsoever. *See* N.J. Stat. 17:11C-28. Nor is there an express private right of action for relief from violations of Section 17:11C-28 anywhere else in the LLA. Instead, penalties for violations of the Licensed Lenders Act are codified at N.J. Stat. 17:11C-48, and include "a penalty not exceeding $5,000" and the "refund [of] any fee taken in violation of th[e] act"—but only upon order of the Commissioner of Banking and Insurance. N.J. Stat. 17:11C-48(a); *see also id.* 17:11C-2 (defining "commissioner"). The Commissioner may also seek the suspension of licenses and injunctive relief, and the statute criminalizes "willful violations" (*id.* 17:11C-48(a), 17:11C-49), but the LLA contains no general private right of action.

Nor may a private right of action be implied. "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 US. 11, 20 (1979). "Furthermore, a new cause of action . . . should generally be created only by legislative enactment or by the New Jersey Supreme Court." *Hyman*, 2008 WL 1924879, at *2 (citing *Proske v. St. Barnabas Med. Ctr.*, 313 N.J. Super 311, 316 (App. Div. 1998)). The New Jersey state courts have accordingly "been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 271 (2001). They have been especially loath to do so "where the statutory scheme contains

36

civil penalties," as the LLA does. *Hyman*, 2008 WL 1924879, at \*2 (citing *R.J. Gaydos*, 168 N.J. at 274). Each of these factors strongly counsels against implying a private right of action under any but the most compelling circumstances in the form of clear legislative intent to allow private suits. *See R.J. Gaydos*, 168 N.J. at 272 (noting that ascertaining the legislature's intent is "the primary goal") (quotation omitted).

Those circumstances are not present here. It is clear from the statutory remedies and text as set out above that there is no "indication of an intent to create . . . a private cause of action" for Section 17:11C-28. *Jalowiecki v. Leuc*, 182 N.J. Super. 22, 27 (App. Div. 1981). In fact, there is evidence of the opposite: Specific provisions of the LLA, which are not at issue here, *do* create a private right of action.[16] It is therefore clear that the legislature knew how to provide such rights when they are intended. *See R.J. Gaydos*, 168 N.J. at 274 ("[W]hen the Legislature wanted members of the public to have access to the civil courts for violations of remedial statutes, the Legislature has expressly conferred a private cause of action.") (internal quotation and citation omitted). Moreover, where—as

---

[16]   Section 17:11C-33(b), formerly part of the Consumer Loan Act, contains a private right of action with the remedies that plaintiffs misascribe to Section 17:11-28. *See* Compl. ¶ 84. Section 17:11C-33, however, concerns only consumer loans, and under the statute, a consumer loan is "not a first mortgage loan or a secondary mortgage loan." N.J. Stat. 17:11C-2. That section therefore does not apply to this case. For the same reason, *Lemelledo v. Ben. Mgmt. Corp. of Am.*, 150 N.J. 255, 261 n.1 (1997), which held that a private right of action exists under Section 17:11C-33, is inapplicable here.

here—an administrative remedy exists in the statute, "an implied private right of action" is generally "inconsistent with the legislation." *Id.* (citing *Jalowiecki*, 182 N.J. Super at 32); *see also Med. Soc'y of N.J. v. Amerihealth HMO, Inc.*, 376 N.J. Super. 57-60 (App. Div. 2005) (declining to find a private right of action in a statute providing for enforcement by the Commissioner of Banking and Insurance).[17]  Accordingly, plaintiffs may not assert a private right of action under Section 17:11C-28.

## V.   COUNT XI DOES NOT STATE A PROPER CLAIM FOR RELIEF.

The final count of the Complaint, titled "John Doe Parties," alleges that "there may be others whose names are unknown to the Plaintiffs" that plaintiffs seek to add "to this action under the designation of John Does."  Compl. ¶ 86. These allegations do not state any known cause of action, and Count XI must therefore be dismissed.

## VI.   PLAINTIFFS' CLAIMS ARE PREEMPTED IN PART.

To the extent that plaintiffs argue that New Jersey statutes, rules, and decisional law prohibited CitiMortgage from imposing the alleged charge in the modification agreement, their claims are preempted by federal law.  The modification was signed on April 21, 2006.  Compl. ¶ 15.  At that time,

---

[17]   At least two of the three relevant prongs of *Cort v. Ash*, 422 U.S. 66 (1975), thus weigh heavily against finding a private right of action here. *See Jalowiecki*, 182 N.J. Super at 25-26.

CitiFinancial Mortgage Co., Inc. ("CFMC") was an operating subsidiary of Citicorp Trust Bank, a federal savings bank. *See* Office of Thrift Supervision Order Approving Application to Establish Operating Subsidiaries, attached to the declaration of Marc S. Singer as Exhibit 3.[18] As a federal savings bank, Citicorp Trust was entitled to the preemptive protection of regulations issued by the Office of Thrift Supervision ("OTS") pursuant to the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.* As an operating subsidiary of Citicorp Trust, CFMC also received the benefit of federal preemption. *See* 12 C.F.R. § 559.3(h).[19]

---

[18]    Judicial notice of CFMC's status as a subsidiary of Citicorp Trust Bank is appropriate because that organizational information is a matter of public record on the Federal Reserve System's National Information Center ("NIC"). *See* Ex. 4. "[A] court may take judicial notice of matters in the public record that a defendant attaches to a motion to dismiss without converting the motion into one for summary judgment." *Coppolino v. Total Call Int'l, Inc.*, 588 F. Supp. 2d 594, 599 (D.N.J. 2008); *accord, e.g., West v. Am. Honda Motor Co.*, 2008 WL 4104683, at *2 (D.N.J. Aug. 28, 2008) (Hillman, J.) (citing *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)).

[19]    On July 1, 2006, CFMC was acquired by CitiMortgage. *See* NIC printout, attached hereto as Ex. 5. At the time, CitiMortgage was an operating subsidiary of Citibank (West), FSB, another federal savings bank. *See* Excerpt from NIC printout, attached hereto as Ex. 6; Excerpt of Securities and Exchange Commission ("SEC") printout, attached hereto as Ex. 7. CitiMortgage was therefore also covered by OTS preemption when it acquired CFMC. As of October 1, 2006, Citibank (West), FSB was reorganized into Citibank, N.A., a national bank. *See* Excerpt of SEC printout, attached hereto as Ex. 8. Accordingly, CitiMortgage became a subsidiary of Citibank, N.A. on that date. *See* Excerpt of NIC printout, attached hereto as Ex. 9. Because these changes occurred after plaintiffs signed the modification agreement, CitiMortgage's current status is irrelevant to this case. Even if CitiMortgage's current status were the basis for a preemption analysis, however, the result would not differ. The National Bank Act, 12 U.S.C. § 1 *et seq.*, and regulations promulgated thereto by the Office of the Comptroller of the

Under HOLA, the OTS has broad authority to issue regulations "to provide for the organization, incorporation, examination, operation, and regulation of" federal savings banks. 12 U.S.C. § 1464(a)(1). "It would have been difficult for Congress to give the [OTS] a broader mandate," as this grant of authority "express[es] no limits on [OTS]'s authority to regulate the lending practices of federal savings and loans." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 161 (1982) (internal quotations omitted).

The OTS has used its authority to "occup[y] the entire field of lending regulation for federal savings associations" and to give those associations "maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation." 12 C.F.R. § 560.2(a). As such, with narrowly-drawn exceptions, "federal savings associations may extend credit as authorized under federal law . . . without regard to state laws purporting to regulate or otherwise affect their credit activities." *Id.* State law is broadly defined to include "statute[s], regulation[s], ruling[s], order[s and] judicial decision[s]." *Id.*

Specifically, Section 560.2(b) of the OTS regulations expressly preempts "state laws purporting to impose requirements regarding" thirteen different topics,

---

Currency ("OCC"), preempt state regulation of national banks and their subsidiaries. Since "[t]he same preemption principles . . . apply to both national banks and [f]ederal thrifts," the OCC has stated that "similar conclusions should be reached regarding the application of [s]tate laws to national banks and their operating subsidiaries as are reached for [f]ederal [t]hrifts and their operating subsidiaries." 66 Fed. Reg. 34784, 34789 (July 2, 2001).

including "[l]oan-related fees" and "terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan." 12 C.F.R. § 560.2(b) & (b)(4)-(5). Pursuant to the OTS's Interpretative Guidelines, when a state law falls into one of the categories enumerated in Section 560.2(b), "the analysis will end there," because "the law is preempted." 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996). In other words, any state law purporting to regulate "loan-related fees" or "terms of credit" in connection with a mortgage held by a federal savings bank or its subsidiaries is automatically preempted by federal law.

In this case, the alleged charge for attorney's fees and costs in the modification agreement is both a "loan-related fee" and a "term of credit." The complaint itself discloses that the charge is a loan-related fee—plaintiffs describe it as "on the loan" (Compl. ¶ 83), as "in connection with [plaintiffs'] mortgage" (*id.* ¶ 39), as barred by "the note and mortgage" (*id.* ¶ 40) or "the contract" (*id.* ¶¶ 53, 59-60), and as charged to "defaulting borrowers of residential mortgages" (*id.* ¶ 19). By contrast, the complaint contains *no* allegations suggesting that the alleged charge was unrelated to plaintiffs' mortgage. As such, the alleged charge was a "loan-related fee," and plaintiffs' claims are therefore subject to preemption by the OTS regulations.

The New Jersey Supreme Court has reached precisely this conclusion with regard to attorney's fees collected by a mortgagee. *Turner v. First Union National Bank*, 162 N.J. 75 (1999), involved a statute forbidding mortgage lenders from charging to the borrower most attorney's fees incurred by the lender. *See id.* at 83-84 (quoting N.J.S.A. 46:10A-6(d)). Applying predecessor regulations to Section 560.2, the court held that the state statute could not apply to a "federally-chartered savings and loan association," because it was "preempted by [OTS] regulations." *Id.* at 87. While the regulations at issue in *Turner* are no longer in force, the court noted both that the shift to different regulations was not meant to change OTS's "long-standing preemption principles" and that Section 560.2 "specifically preempts any state statute, regulation, or judicial decision applying to loan-related fees." *Id.* at 93 (internal quotation omitted). It therefore indicated that state attempts to regulate the collection of attorney's fees by mortgagees was preempted by 12 C.F.R. § 560.2(b)(5). *See id.*; *see also, e.g., Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008) (holding a claim regarding loan-related fees brought under California's UCL to be expressly preempted).

In addition to constituting a "loan-related fee," the charge at issue is a "term[] of credit" under the OTS regulations. By setting a payoff schedule for the loan and stating the principal balance due and additional amounts owed on the loan (*see* Ex. 2, at 2-4), the modification agreement made "adjustments to the interest

rate, balance, payments due, or term to maturity of the loan."    12 C.F.R. § 560.2(b)(4).    The alleged charge for attorney's fees and costs was partially incorporated into the balance and partially added as an amount separately due.    In short, it was part and parcel of the "adjustments to the . . . balance [and] payments due" made by the modification agreement, and thus a "term of credit" under 12 C.F.R. § 560.2(b)(4).    For this reason, too, Section 560.2(b) specifically preempts all of plaintiffs' claims insofar as they allege that New Jersey statutes, rules, and decisional law limit the amount of attorney's fees and costs CitiMortgage was entitled to collect.

## VII.    THE COMPLAINT FAILS TO STATE A CLAIM BASED ON ANY OTHER FEES OR CHARGES.

In addition to the alleged charge of attorney's fees and costs, the complaint mentions various other fees and charges in passing.    *See* Compl. ¶ 19(c) ("fail[ure] to credit . . . payments received by the Bankruptcy Trustee"), ¶ 19(d)(i) ("sheriff's commissions"), ¶ 19(d)(ii) ("late charges"), ¶ 35(I) ("interest, default related fees," and unspecified "charges"), ¶ 35(II)(b) & (III)(b) ("excessive interest"), ¶ 38 ("interest [and] default related fees"), ¶ 83 ("illegal late charges").    Only two things need to be said about these allegations.    First, except for interest and attorney's fees, the mortgage and note are silent as to all of these other fees.    Absent some explanation of how these fees not mentioned in the contract could violate the

contract, plaintiffs have not and may not state a claim for a breach of contract.[20] *See Zinn*, 2006 WL 2135811, at *9 (dismissing a claim on the ground that the plaintiffs did "not explain how [defendant's] conduct breached any provision of the [contract]"); *Frederico I*, 2006 WL 624901, at *3 (dismissing a claim that failed to state which contractual provision the defendant allegedly breached); *Parkway Mortgage, Inc. v. Scott*, 2001 WL 1715779, at *8 (D.N.J. Dec. 21, 2001) (granting dismissal where the plaintiff "fail[ed] to allege a breach of any contractual obligation").

Second, and more generally, the Complaint contains no factual allegations—as opposed to legal conclusions—to support ***any*** theory of liability based on any fees besides the charge in the modification agreement. For example, Paragraph 19 of the Complaint, which mentions payments by a Bankruptcy Trustee, late charges, and sheriff's commissions, reads as if it belongs to a different case. Nothing else in the complaint serves to explain why payments by a Bankruptcy Trustee or sheriff's charges are even relevant to the relationship between the parties. Similarly, even though late fees are mentioned in Paragraph 83 as well as Paragraph 19, there is no allegation that CitiMortgage ever charged any late fees to

---

[20]    The same may be said about the bare-bones assertion in the breach of contract count that CitiMortgage "failed to disclose in advance to the Plaintiffs the amount of any fees or costs which may be charged." Compl. ¶ 39. There is nothing in the note or the mortgage concerning notice, and the plaintiffs fail to state what term was violated, or what fees—even in a general sense—were imposed without notice.

the plaintiffs, and there are no such charges in the modification.[21]  *See* Ex. 2.

Paragraph 38, which is part of the purported class allegations in the Complaint,

references default fees, but those fees appear nowhere in plaintiffs' individual

claims.  Finally, while interest is mentioned in Paragraph 35 as well as the class

allegations of Paragraph 38, the Complaint only includes the bare legal conclusion

that excessive interest was collected.  *See* Compl. ¶ 38.  Plaintiffs never allege that

the interest charged in the modification agreement is excessive or give any

indication that unwarranted amounts of interest were charged at any other time.

In short, the complaint provides no detail whatsoever "to raise a right to

relief" based on any of these fees "above the speculative level."  *Twombly*, 127 S.

Ct. at 1965 n.3; *see also, e.g.*, *Mezzina v. U.S. Dep't of Housing & Urban Dev.*,

2008 WL 630481, at *2 (D.N.J. Mar. 7, 2008) (dismissing a breach of contract

claim where "[t]he complaint merely state[d] that Defendants owe[d] Plaintiff 'late

fees' and provide[d] no material facts evidencing entitlement to monetary

recovery").   Accordingly, the Complaint states claim of any sort—breach of

contract or otherwise—has even potentially been stated as to these other various

fees.[22]

---

[21]    Paragraph 83 purports to refer the reader to "illegal late charges as outlined
previously," but that is a promise the complaint does not keep.

[22]    The class allegations in the Complaint appear to invoke a sixteen-year
limitations period.  *See* Compl. ¶¶ 8-9, 25.  Plaintiffs are presumably relying on
N.J. Stat. 2A:14-4, which provides a sixteen-year limitations period for "action[s]

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed in its entirety.

Dated this 6th day of April, 2009.

/s/ Marc C. Singer
Marc C. Singer
Vincent F. Papalia
Attorneys for Defendant
CitiMortgage Co., Inc.
Saiber, LLC
One Gateway Center, 13th Floor
Newark, NJ 07101
Telephone: (973) 622-3333

Of Counsel:
Lucia Nale
Maritoni Kane
**Mayer Brown LLP**
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600

Miriam R. Nemetz
Richard P. Caldarone
**Mayer Brown LLP**
1909 K Street, N.W.
Washington, DC 20006
(202) 263-3000

---

at law . . . upon an obligation under seal *conditioned for the payment of money only*" (emphasis added). This period thus applies only to the enforcement of notes and bonds signed under seal and, conversely, to actions to cancel a debt or to quiet title. *See, e.g., Burlington County Country Club v. Midlantic Nat'l Bank S.*, 223 N.J. Super. 227 (Ch. 1987); *Alexander v. Manza*, 132 N.J.L. 374 ( A & E 1945). Plaintiffs' garden-variety breach of contract and tort claims are, by contrast, governed by a six-year limitations period. *See* N.J. Stat. 2A:14-1; *see also, e.g., D'Angelo v. Miller Yacht Sales*, 261 N.J. Super. 683, 688 (App. Div. 1993) (applying a six-year period to a CFA claim).