Marc C. Singer
Vincent F. Papalia
**SAIBER LLC**
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5311
(973) 622-3333
mcs@saiber.com
vfp@saiber.com
Attorneys for Defendant
CitiMortgage, Inc., improperly pled as
CitiFinancial Mortgage Company, Inc.

Of Counsel:
Lucia Nale                           Miriam R. Nemetz
Maritoni Kane                        Richard P. Caldarone*
**Mayer Brown LLP**                  **Mayer Brown LLP**
71 South Wacker Drive                1909 K Street, N.W.
Chicago, IL 60606                    Washington, DC 20006
(312) 782-0600                       (202) 263-3000

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL and LYNN OGBIN Individually and as a class representative on behalf of others similarly situated, | Civil Action No. 09-00023-NLH-JS |
| Plaintiffs, | **DECLARATION OF MARC C. SINGER IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT** |
| v. | |
| CITIFINANCIAL MORTGAGE COMPANY, INC. f/k/a Ford Consumer Finance Company, Inc. | *Document Electronically Filed* |
| Defendants. | |

I, MARC C. SINGER, declare under penalty of perjury that:

---

* Admitted in Virginia only; not admitted in the District of Columbia. Practicing under the supervision of firm principals.

1.      I am an attorney-at-law of the State of New Jersey and a member of the law firm of Saiber LLC, counsel for defendant CitiMortgage, Inc., improperly pled as CitiFinancial Mortgage Co., Inc. ("CitiMortgage").  I submit this Declaration in further support of CitiMortgage's motion to dismiss the Complaint.

2.      Attached hereto as Exhibit 1 is a true and correct copy of note and mortgage executed by plaintiffs Michael and Lynn Ogbin on January 11, 1995.

3.      Attached hereto as Exhibit 2 is a true and correct copy of the Loan Modification Agreement executed by Plaintiffs Michael and Lynn Ogbin.

4.      Attached hereto as Exhibit 3 is a true and correct copy of the Office of Thrift Supervision Order Approving Application to Establish Operating Subsidiaries dated April 30, 2004, establishing CitiFinancial Mortgage Company, Inc. as a subsidiary of Citicorp Trust Bank, FSB.

5.      Attached hereto as Exhibit 4 is a true and correct copy of a print out from the National Information Center indicating that CitiFinancial Mortgage Company was a subsidiary of Citicorp Trust Bank, FSB on April 21, 2006.

6.      Attached hereto as Exhibit 5 is a true and correct copy of a print out from the National Information Center indicating that CitiFinancial Mortgage Company, inc. was acquired by CitiMortgage  on July 1, 2006,

7.      Attached hereto as Exhibit 6 is a true and correct copy of  a print out from the National Information Center indicating that at the time that CitiMortgage acquired CitiFinancial Mortgage Company, Inc., CitiMortgage was a subsidiary of Citibank (West), FSB.

8.      Attached hereto as Exhibit 7 is a true and correct copy of  a Securities and Exchange Commission printout indicating that prior to October 1, 2006, and at the time that

CitiMortgage acquired CitiFinancial Mortgage Company, Inc., CitiMortgage was a subsidiary of Citibank (West), FSB.

9.      Attached hereto as Exhibit 8 is a true and correct copy of a Securities and Exchange Commission printout indicating that Citibank (West), FSB reorganized into Citibank, N.A. as of October 1, 2006.

10.     Attached hereto as Exhibit 9 is a true and correct copy of a print out from the National Information Center indicating that CitiMortgage became a subsidiary of Citibank, N.A. as of October 1, 2006.

I declare under penalty of perjury that the foregoing is true and correct.

/s/Marc S. Singer___
MARC S. SINGER

Dated: April 6, 2009

# EXHIBIT 1

# NOTE

| LENDER: | BORROWER(S): |
|---|---|
| FORD CONSUMER FINANCE COMPANY, INC.<br>240 CEDAR KNOLLS ROAD<br>CEDAR KNOLLS, NJ 07927 | MICHAEL OGBIN<br>LYNN P. OGBIN<br>111 ROBINS RUN EAST<br>SWEDESBORO, NJ 08085 |

| LOAN DATE | DATE INTEREST BEGINS | FIRST PAYMENT DATE | MATURITY DATE AND FINAL PAYMENT DATE | PAYMENT SCHEDULE: |
|---|---|---|---|---|
| 01/11/95 | 01/17/95 | 02/17/95 | 01/17/05 | 6<br>OF $   791.37<br>FOLLOWED BY 113<br>OF $   934.83<br>FOLLOWED BY  0<br>OF $        .00<br>FOLLOWED BY 1<br>OF $  77,364.59 |
| **PRINCIPAL**<br>$  82,982.74 | | **DUE DATE**<br>17TH<br>OF EVERY MONTH | | |

"I," "we," "me," "us," "my," and "our" refer to the Borrower(s) named above. "You" and "your" refer to the Lender named above.

**REPAYMENT**  I promise to pay you, at your office, the Principal together with interest calculated at the Agreed Rate of Interest as determined below until fully paid.

I will repay my loan by making the monthly payments set forth in the Payment Schedule. Payments will be made every month beginning on the First Payment Date stated above until the loan is fully paid. If there is no such date in any month that follows, payment will be made on the last day of that month. The amount of my monthly payment will change if the interest rate changes. Increases in the interest rate will result in higher payments. Decreases in the interest rate will result in lower payments. I will pay the amount of my new monthly payment on the first monthly payment date after the interest rate changes, until the amount of my monthly payment changes again.

Each payment I make will be applied first to interest owed to the date of payment and the remainder to the principal balance.

**AGREED RATE OF INTEREST**  THIS IS A VARIABLE INTEREST RATE LOAN AND THE INTEREST RATE WILL INCREASE OR DECREASE WITH CHANGES IN THE PRIME RATE. The Prime Rate ("Index") is the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal. The interest rate is subject to change semi-annually, and will be determined by the sum of the Prime Rate plus a "Margin" as stated below. The date on which my interest rate will be subject to change is the "Rate Change Date." The date on which the value of the Prime Rate is examined for purposes of determining the interest rate is the "Rate Determination Date," and will be the last business day of the second month prior to any Rate Change Date.

The Prime Rate as of the last business day of     DECEMBER 1994    , is   8.500   percent, my Margin is   4.650   percent; therefore, the "current" interest rate is   13.150   percent per year.

However, until my sixth payment due date, my interest rate is discounted and will be   10.900   percent per year.

Beginning with the sixth payment due date, the interest rate will be   4.650   percentage points (Margin) greater than the Prime Rate as of the last business day of the second month prior to the month in which the sixth payment is due (Rate Determination Date). Thereafter, the interest rate will increase on the twelfth payment due date and every six months thereafter (Rate Change Dates), if the highest Prime Rate as of the appropriate Rate Determination Date has increased or decreased by at least one-quarter of a percentage point from the Prime Rate for the previous six-month period. Interest rate changes will be effective upon 25 days written notice. During the first twelve months, the interest rate cannot increase more than three (3%) percent above the "current" (non-discounted) interest rate. Thereafter, the interest rate cannot increase more than three (3%) percent in any twelve-month period from the Loan Date. In no event, however, will the interest rate ever be less than   8.500   percent per year or more than eighteen (18%) percent per year. If the Index is no longer available, you will choose a new index which is based upon comparable information. You will give notice of this choice. You reserve the right to waive part or all of any adjustment resulting from an interest rate increase. I agree to pay interest after maturity at the interest rate that is in effect as of the Maturity Date, until paid in full.

**DEFAULT**  I will be in default if I fail to pay any payment or part of a payment on time or if I fail to comply with any of the terms of the Mortgage on the real estate given as security for this loan.

If I default, you have the right to declare the entire unpaid amount of my loan immediately due and payable without giving me notice of the default or asking me to pay. If you declare the balance of my loan due and payable, you have the rights and remedies provided for in the Mortgage that secures this loan, including the right to require me to pay any deficiency.

**ATTORNEY FEES**  I will pay reasonable attorney's fees if you hire an attorney to collect this loan. The attorney may not be your salaried employee.

**MORTGAGE RELEASE FEE**  After I have paid you all amounts owed, you will release the Mortgage given to secure this loan. I will pay the costs paid by you to record the release of the Mortgage and $25.00 as a mortgage release fee at that time.

**PREPAYMENT**  I have the right to pay in advance at any time. If I prepay in full, no part of the loan fee will be refunded.

**DELAY IN ENFORCEMENT**  You can delay enforcing your rights under this Note without losing them. If I default in complying with any of the terms of my loan and you do not declare the loan balance immediately due and payable, this does not mean you cannot do so in the future if I default again.



NO

C<br>N<br>O<br>T

880710A<br>Rev. 8-18-92

SECURITY FOR THIS LOAN    I give you a Mortgage dated the same as this Note to assure that I keep the promises I have made in this Note. The Mortgage covers my real estate at 111 ROBINS RUN EAST SWEDESBORO, NJ 08085

The Alternative Mortgage Transaction Parity Act of 1982 and the Federal Depository Institutions Deregulation and Monetary Control Act of 1980 govern certain provisions of this loan.

BY SIGNING IN THE SPACE BELOW, I ACKNOWLEDGE THAT I HAVE RECEIVED A FULLY COMPLETED COPY OF THIS NOTE.

_____ Witness    X _____ 1/11/95
John C. Miller               MICHAEL OGBIN        Date

_____ Witness    X Lynn P. Ogbin    1-11-95
John C. Miller               LYNN P. OGBIN        Date

Page 2 of 2

NOTICE: See additional pages for additional loan terms.

# MORTGAGE

HB2831-P091

Dated 01/11/95

AND

099278

Mortgagor (Parties giving this Indenture): MICHAEL OGBIN
LYNN P. OGBIN

Mortgagee (Party to whom this Mortgage is given): FORD CONSUMER FINANCE COMPANY, INC.
corporation, having an office at 240 CEDAR KNOLLS ROAD
CEDAR KNOLLS, NJ 07927

The words "I" or "me" used in this Mortgage mean anyone who signs as Mortgagor. The word "you" means the Mortgagee.

I sell and convey in fee simple my property which is described in this mortgage to you for $    82,982.74 , if I do not comply with the purpose and other promises I make in this mortgage.

PURPOSE OF MORTGAGE: To secure payment of a debt I owe you in the principal amount of $   82,982.74 , plus interest. A Note having the same date as this Mortgage states I am to pay this debt in   120   monthly payments. The first payment is due   02/17/95   , followed by   5   payments to be paid on the same day of each month that follows, followed by   113   payments to be paid the same day of each month that follows, and a final payment due on   01/17/05 .

Each payment shall be applied first to interest to the date of actual payment and the remainder to principal.

PROPERTY MORTGAGED: This Mortgage covers the property located in the   TOWNSHIP   of LOGAN   , County of GLOUCESTER   , State of New Jersey. This is the same property conveyed to me by deed from   DFD REAL ESTATE, INC.   , dated   JANUARY 6, 1984   and recorded FEBRUARY 21, 1984 in the Office of the COUNTY OF GLOUCESTER   in Book   1485   at Page   41   . The metas and bounds description contained in that deed is made part of the Mortgage and incorporated by reference. The premises are commonly known as:

SEE EXHIBIT A ATTACHED HERETO, INCORPORATED HEREIN AND MADE A PART HEREOF

The mortgage covers all buildings on the property and anything belonging to the buildings or property.

TITLE TO PROPERTY: I warrant the title to the property; that is, I assure you that I own my property.

MAINTENANCE: I will keep the property in reasonably good repair.

TAXES-LIENS-INSURANCE: I will pay all taxes, liens, assessments, obligations, water rates and any other charges against the property and maintain insurance on the property in your favor in a form and amount satisfactory to you. You may pay any such tax, lien, assessment, obligation, water rates, premium, or other charge or purchase such insurance in your own name if I fail to do so. The amount you pay will bear a finance charge at the highest lawful rate, will be an additional lien on the real estate, and may be enforced and collected in the same manner as the other obligation secured by this Mortgage.

ASSIGNMENT OF RENTS: I give you the right to collect rents due from tenants of the property if I fail to pay any payment on my Note on time or if I fail to keep any promise in this Mortgage.

DEFAULT: If I fail to pay any payment on my Note on time or if I fail to keep any promise in this Mortgage, you have the right to immediate payment in full of my Note balance. It is not necessary for you to request payment or give me notice that the entire balance is due.

PAYMENT DUE UPON SALE: I understand that if I sell my property, you have the right to demand payment in full of my Note.

MORTGAGE RELEASE FEE: I will pay you the costs of recording the release of this Mortgage and a $25.00 mortgage release fee when this Mortgage is released.

Prepared by: S.A. HCGANN

I/We signed and sealed this Mortgage on the date at the top of this Mortgage. I/We received a true copy of this Mortgage.

Mortgagee certifies this to be true copy of the Mortgage executed by the Mortgagors this date.

Mortgagee

By   John C. Miller III

X   _____   Mortgagor
MICHAEL OGBIN

X   _____   Mortgagor
LYNN P. OGBIN

STATE OF NEW JERSEY   } SS:

COUNTY OF   CAMDEN

M
T
G
I

BE IT KNOWN, that on the   11th   day of   January   1995   , before the subscriber, a Notary Public of the State of New Jersey, personally appeared   Michael Ogbin   and   Lynn P. Ogbin   , who are, I am satisfied, the grantors mentioned in the foregoing MORTGAGE and the contents thereof being by me first made known unto them did thereupon acknowledge that they signed, sealed and delivered the same as their voluntary act and deed, for the uses and purposes therein expressed.

(Seal)

John C. Miller III
Attorney at Law

NJ300080   BM0788
Rev. 6-1-83

# EXHIBIT 2

After Recording Return To:
**CitiFinancial Mortgage Company, Inc.**
**Attn: CFMC/Trailing Documents**
**P.O. Box 104759**
**Irving, TX 75014**

Lender Loan Number: 0002403792
If Applicable: MERS MIN:                                    MERS Phone: 1-888-679-6377

———————————————————*[Space Above This Line For Recording Data]*———————————————

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement") is made this 21st day of **April, 2006** (the "Effective Date") by and between
**MICHAEL OGBIN and LYNN P OGBIN** ("Borrower")
and CitiFinancial Mortgage Company, Inc. ("Lender")

, amends and supplements one certain loan agreement or promissory note ("Note") dated **January 11, 1995**, in the original principal amount of **eighty two thousand nine hundred eighty two and 74/100ths Dollars ($82,982.74)** executed by Borrower.

Borrower acknowledges that Lender is the holder and the owner of the Note and understands that Lender may transfer the Note, as amended by this Agreement, and that anyone who takes the Note by transfer and who is entitled to receive payments under the Note is called the "Lender" in this Agreement. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated **January 11, 1995**, and filed for record on [As Per Deed of Trust], under of the real property records of **GLOUCESTER** County, New Jersey. Said Security Instrument conveys the real and personal property described in such Security Instrument (the "Property") located at:
**111 ROBINS RUN E, SWEDESBORO, NJ 08085**
(Property Address): which real property is more particularly described in the Security Instrument.

☐  **MERS LOAN.** If this box is checked, the loan evidenced by the Note and secured by the Security Instrument was assigned to or the Security Instrument was prepared in the name of the Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware and has an address and telephone number of P. O. Box 2026, Flint, MI 48501-2026, (888) 679-6377. All references to Lender shall mean the Lender above and, to the extent referencing the holder of the Security Instrument, shall reference MERS acting solely as nominee for Lender.

Lender has made certain advances under the Security Instrument for which Borrower is obligated to pay Lender upon demand or certain payments otherwise due under the terms of the Note or Security Instrument are currently past due. Borrower now desires to extend or rearrange the time and manner of (re)payment of the Note and to extend and carry forward the lien(s) on the Property whether created by the Security Instrument or otherwise. Lender, the legal holder and owner of the Note and of the lien(s) securing the same has agreed at the request of the Borrower to extend or rearrange the time and manner of payment of the Note.

For and in consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.    ☐    **Modification Fee:** If this box is checked, Borrower agrees to pay Lender a fee for processing the modification set forth in this Agreement of $            . This Modification Fee shall be due and payable on the Maturity Date as set forth below, unless the loan is paid prior to maturity by payoff or otherwise, when such fee shall be due and payable.

2.   **Waived or Forgiven Amounts**: For and in consideration of the modification of the loan as described herein, Lender has agreed to waive or forgive the following amounts that have accrued and are owing under the Note or Security Instrument, as follows:

| | | |
|---|---|---|
| (i) | Unpaid Principal (not included in paragraph 3 below) | $ 0.00 |
| (ii) | Accrued Interest Previously Extended (not included in paragraph 4 below) | $ 0.00 |
| (iii) | Accrued Interest Currently Due (not included in paragraph 3 or 4 below) | $ 0.00 |
| (iv) | Late Charges (not included in paragraph 3 or 4 below) | $ 0.00 |
| (v) | Advances regarding real estate taxes or to pay insurance premiums (not included in paragraph 3 or 4 below) | $ 0.00 |
| (vi) | Appraisal fees, attorneys' fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims, if any. (not included in paragraph 3 or 4 below) | $ 0.00 |
| | Total Waived/Forgiven Amount | $ 0.00 |

Borrower acknowledges and understands that Lender may be required to report certain cancellation of debt for discharges of indebtedness to the Internal Revenue Service on Form 1099-C or a similar form, including any that may be reportable because of this Agreement.

3.   **Acknowledgment of Principal Balance**: Borrower acknowledges that as of the Effective Date and except for the Additional Amounts described in paragraph 4 below, and after excluding the Waived/Forgiven Amount described in paragraph 2 above, the amount payable under the Note and secured by the Security Instrument is the total of the following amounts indicated below:

| Description | Amount Due |
|---|---|
| (i) Unpaid principal balance (not included in paragraph 1 above) | $80,005.05 |
| (ii) Accrued unpaid interest (not included in paragraph 2 above or 4 below) | $ 799.32 |
| (iii) Late charges accrued and unpaid (not included in paragraph 2 above or 4 below) | $ 0.00 |
| (iv) Advances regarding real estate taxes or to pay insurance premiums (not included in paragraph 2 above or 4 below) | $30,608.04 |
| (v) Appraisal fees, attorneys fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims (not included in paragraph 2 above or 4 below) | $4,547.70 |
| (vi) Advances to establish initial escrow account, if any | $ 0.00 |
| Total Amount Due | $115,960.11 (the "Principal Balance"). |

Loan No: 0002403792

Loan Modification Agreement (Fixed Rate/Capitalization)
CitiFinancial Mortgage Company, Inc.                    Page 2 of 11                    DOC_00001_011506

4.  **Additional Amounts Owed.** The Borrower acknowledges and agrees that in addition to the Principal Balance described in paragraph 3 above, and after excluding the Waived/Forgiven Amount described in paragraph 2 above, Borrower is currently obligated to Lender for the following additional charges listed under the Additional Amount column below, herein referred to as the "Additional Amount." The Additional Amount has accrued or been incurred under the terms of the loan documents and/or Security Instrument or under the terms of this Agreement:

|      |                                                                                                                                                  | Additional Amount |
|------|--------------------------------------------------------------------------------------------------------------------------------------------------|-------------------|
| (i)  | Modification Fee                                                                                                                                 | $0.00             |
| (ii) | Accrued Interest Previously Extended (not included in paragraph 2 above)                                                                          | $15,450.14        |
| (iii)| Accrued Interest Currently Due (not included in paragraph 2 or 3 above)                                                                           | $ 0.00            |
| (iv) | Late Charges accrued and unpaid (not included in paragraph 2 or 3 above)                                                                          | $ 0.00            |
| (v)  | Advances regarding real estate taxes or to pay insurance premiums (not included in paragraph 2 or 3 above)                                        | $ 0.00            |
| (vi) | Appraisal fees, attorneys' fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims against property, if any (not included in paragraph 2 or 3 above) | $ 600.60          |
|      | **Additional Amount Total**                                                                                                                      | **$16,050.74**    |

The Additional Amount is in addition to the Principal Balance described in paragraph 3 above. The Additional Amount shall continue to be due and owing by Borrower to Lender in accordance with the terms of the loan documents and Security Instrument or due to this modification; provided however, Lender agrees that for so long as Borrower makes the principal and interest payments as provided in paragraph 6 below in a timely manner and ultimately pays the Additional Amount to the extent obligated under the terms of the loan documents or Security Instrument, which if not sooner demanded shall be due and payable upon any voluntary loan payoff or on the Maturity Date, Lender will not seek to enforce its security interest under the terms of the Security Instrument solely for failure to pay the Additional Amount.

Notwithstanding the foregoing, to the extent personal liability of any or all of the Borrowers (if more than one) has been discharged in bankruptcy with respect to any amount payable under the Note, as modified herein, nothing contained herein shall be construed to impose personal liability to repay any such obligation on the Borrowers whose obligations have been so discharged. The Borrowers acknowledge that the Additional Amount set forth above may not be reflected in the loan amount reported by Lender to any credit reporting agency or reported as part of the balance on any receipt or statement issued by Lender, but nevertheless Borrowers acknowledge that such Additional Amount is due and payable as set forth above. **Notice: The Parties understand and agree that any amounts that are written off, capitalized into principal or deferred to the end of the loan will all be characterized as "waived" in the first monthly statement that captures the terms of the Loan Modification.**

5.  **Repayment Terms:** Interest will be charged on the Principal Balance until the full amount of principal has been paid. Borrower will pay interest at the rate of 11.90% per year from the Effective Date.

Any terms of the Note or Security Instrument which would result in any further interest rate reduction, including without limitation a Timely Payment Rewards program, Smart Step program or Freedom Loan program, are hereby deleted and will not be applicable to the Note as modified herein. Further, any terms of the Note or Security Instrument which provide for an adjustment of the interest rate are hereby deleted.

Loan No: 0002403792

Loan Modification Agreement (Fixed Rate/Capitalization)
CitiFinancial Mortgage Company, Inc.                     Page 3 of 11                     DOC_00001_011506

6. **Time and Place of Payments:** The Borrower promises to make monthly principal and interest payments of U.S. $1183.86, beginning on **May 21, 2006**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **April 21, 2036** ("Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date. The Borrower will make such payments at **P.O. Box 9023, Des Moines, IA 50362-9023**, or at such other place as Lender may require. Payments will be applied in accordance with the terms of the Note and Security Instrument or other loan documents.

7. **Automatic Payment Draft:** If Borrower currently participates in a program allowing a decrease in interest rate when payments are made by automatic draft or other electronic means, including without limitation the Equity Builder, ACH or other process, such interest rate decrease shall be in addition to the revised interest rate set forth in paragraph 5 above. In addition, the amount of the automatic draft contained in the payment draft, ACH, Equity Builder or other process will not change unless instructed by Borrower to Lender in writing.

8. **Payment Waiver Protection Monthly Fee:** If the terms of Borrower's Note or other loan document provides for a monthly fee for Payment Waiver Protection coverage, in addition to the monthly payment of principal and interest, such monthly fee shall continue provided, the monthly fee payable shall be changed to the following:

    PWP Monthly Fee: $

    Other than the change in the monthly fee amount, all other terms of the Payment Waiver Protection Program remain in effect.

9. **Late Charges for Overdue Payments:** If the Lender has not received the full amount of any monthly payment when due, Borrower will pay a late charge to the Lender in an amount as set forth in the Note.

10. **Borrower's Right to Prepay:** Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When Borrower makes a prepayment, Borrower will tell the Note Holder in writing that Borrower is doing so and will pay to Lender any prepayment penalty or fee provided in the Note or Security Instrument, if any.

11. **Renewal and Extension of Maturity:** It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the Indebtedness evidenced by the Note, as renewed, modified, and extended (if the Maturity Date of the original Note has been changed) hereby, has been fully paid. Lender and Borrower acknowledge and agree that such extension (if the Maturity Date of the original Note has been changed), renewal, amendment, modification, or rearrangement shall in no manner affect or impair the Note or the liens and security interests securing same, the purpose of this Agreement being simply to extend (if the Maturity Date of the original Note has been changed), modify, amend or rearrange the time and the manner of payment of the Note and the indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note (including if applicable any and all vendor's liens securing the Note), which are expressly acknowledged by the Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note. The Borrower hereby expressly waives the benefit of any and all statutes of limitation which might otherwise inure to Borrower's benefit, or be in any way applicable to Borrower's obligations under the terms of any and all instruments described herein.

12. **Transfer of the Property or a Beneficial Interest in Borrower:** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration

of this period, the Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on the Borrower.

13. **Release and Waiver of Other Claims:**  In consideration of the modification of certain provisions of the Note and Security Instrument, all as herein provided, and the other benefits received by Borrower hereunder, Borrower acknowledges that Borrower currently has no claims against Lender arising out of the origination or servicing of the Note or Security Instrument and does hereby release Lender, and its predecessors, successors, affiliates, assigns, agents, officers, directors, employees and representatives, of and from any and all claims, demands, actions and causes of action of any and every kind of character, whether known or unknown, present or future, which Borrower may have against Lender, and its predecessors, successors, affiliates, assigns, agents, officers, directors, employees and representatives, arising out of or with respect to any and all transactions relating to the Note and the Security Instrument occurring prior to the date hereof.

14. **Loan Documentation:**  As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's obligations to Lender thereunder.  In the event of any inconsistency between this Agreement and the terms of the Note and Security Instruments, this Agreement shall govern.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.  Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

15. **Co-Signer Liability:**  Notwithstanding any provision to the contrary in this Agreement, if any Borrower designated above signs this Agreement but did not execute the Note, such Borrower shall be deemed to be co-signing this Agreement only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Agreement, and shall be deemed a "Co-signer" under this paragraph.  Such Co-signer is not personally obligated to pay the sums secured by the Security Instrument, and agrees that Lender and the remaining Borrower's may agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note or the Security Instrument, without Co-signer's consent.

16. **Taxes and Insurance.**  Borrower acknowledges that the monthly payments on the Note, as modified and set forth in paragraph 6 above, do not include escrow payments for taxes and insurance or other payments.  Unless Borrower is required to establish an escrow account herewith and an escrow account is established, the payment of such items remains the sole obligation of Borrower.  Borrower acknowledges that in the event Lender has advanced or advances funds for the payment of real estate taxes that are included in the Principal Balance set forth in this Agreement and if such advanced funds are returned to the Lender by a taxing authority for any reason, then the amount of such funds returned to the Lender shall be applied to reduce the amount of the Principal Balance.

17. **Escrow Provisions.**

The Security Instrument shall be amended to add the following escrow provisions:

**A.  Definitions:**

"Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

"Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

Loan No: 0002403792

Loan Modification Agreement (Fixed Rate/Capitalization)
CitiFinancial Mortgage Company, Inc.                     Page 5 of 11                     DOC_00001_011506

"RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

"Security Instrument" means the mortgage, deed of trust, deed to secure debt, or other designated document which secures the obligation of Borrower to Lender, to which this Addendum is added.

B. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section D. below. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.

Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights and pay such amount and Borrower shall then be obligated to repay to Lender any such amount immediately upon demand. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given to Borrower and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section B.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA. If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

C. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section B above.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section C.

Lender may require Borrower to pay a one-time charge for real estate tax verification and/or reporting service used by Lender in connection with this Loan.

D. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section D shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property by foreclosure or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

[X]   If checked, an Escrow Account is required to be established by Borrower for the payment of the Escrow Items described in the Escrow Provisions above. The sums required for payment of the Escrow Items shall be in addition to the monthly principal and interest payment set forth in paragraph 5 above. If not checked, Escrow Items will not be collected by Lender and Borrower shall be solely responsible for payment of all taxes and insurance premiums.

18. **Credit Insurance.** If Borrower purchased any credit life insurance, credit disability insurance or other type of credit insurance in connection with the original loan which is modified in this Agreement, Borrower acknowledges that such insurance will continue to cover only that coverage amount and for that term described in the Certificate of Insurance.

19. **No Oral Agreements:** **The written Loan Agreements represent the final agreements between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.**

EXECUTED effective as of the day and year first above written.

Witnesses (Required if Property located in CT, FL, GA, LA, SC or VT):

| | |
|---|---|
| _____ (Witness) | _____ (Borrower) |
| | MICHAEL OGBIN |
| _____ (Witness) | _____ (Borrower) |
| | LYNN OGBIN |
| _____ (Witness) | _____ (Borrower) |

Loan No: 0002403792

Loan Modification Agreement (Fixed Rate/Capitalization)
CitiFinancial Mortgage Company, Inc.                    Page 8 of 11                    DOC_00001_011506

_____
                            (Witness)                                      (Borrower)


ACCEPTED AND AGREED TO BY LENDER:          If MERS Loan:
CitiFinancial Mortgage Company, Inc.          Mortgage Electronic Registration Systems, Inc.



By: _____          By: _____



Title: _____          Title: _____



_____—[Acknowledgments on Following Pages]—_____

**INDIVIDUAL ACKNOWLEDGMENT**

State of

County of

Before      me,      the      undersigned      authority,      on      this      day      personally      appeared

MICHAEL OGBIN

known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name is/are subscribed
to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

   Given under my hand and seal this  day of

               _____
               Notary Public
               Notary's Printed Name: _____
               My commission expires: _____

**INDIVIDUAL ACKNOWLEDGMENT**

State of

County of

Before      me,      the      undersigned      authority,      on      this      day      personally      appeared

LYNN P OGBIN

known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name is/are subscribed
to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

   Given under my hand and seal this  day of

               _____
               Notary Public
               Notary's Printed Name: _____
               My commission expires: _____

Loan No: 0002403792

Loan Modification Agreement (Fixed Rate/Capitalization)
CitiFinancial Mortgage Company, Inc.      Page 10 of 11      DOC_00001_011506

**INDIVIDUAL ACKNOWLEDGMENT**

State of

County of

Before        me,        the        undersigned        authority,        on        this        day        personally        appeared

known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name is/are subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal this        day of

Notary Public
Notary's Printed Name: _____
My commission expires: _____

**INDIVIDUAL ACKNOWLEDGMENT**

State of

County of

Before        me,        the        undersigned        authority,        on        this        day        personally        appeared

known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name is/are subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal this        day of

Notary Public
Notary's Printed Name: _____
My        commission        expires:        _____

Loan No: 0002403792

Loan Modification Agreement (Fixed Rate/Capitalization)
CitiFinancial Mortgage Company, Inc.                    Page 11 of 11                    DOC_00001_011506

# EXHIBIT 3

# OFFICE OF THRIFT SUPERVISION

## Order Approving Application To Establish Operating Subsidiaries

| | |
|---|---|
| **Order No.:** | **2004-23** |
| **Date:** | **April 30, 2004** |
| **Docket No.** | **14470** |

Citicorp Trust Bank, fsb, Newark, Delaware (Savings Bank), a federal stock savings bank, has filed an application with the Office of Thrift Supervision (OTS), pursuant to 12 U.S.C. § 1828(m) and 12 C.F.R. § 559.11, requesting approval to establish two operating subsidiaries. The Savings Bank proposes to acquire the following two companies from its parent holding company and hold them as first- and second-tier operating subsidiaries: CitiFinancial Mortgage Company, Inc. (Mortgage Subsidiary), and its subsidiary, Associates Home Equity Receivables Corporation (Second-Tier Subsidiary) (collectively, the Operating Subsidiaries).

## Background

The Savings Bank, a Bank Insurance Fund @IF)-insured federal stock savings bank, is a wholly owned, direct subsidiary of CitiFinancial Credit Company (CCC), which is a wholly owned indirect subsidiary of Citigroup Inc. **As** of December 31, 2003, the Savings Bank had total assets of $17 billion, total liabilities of $15.7 billion, and total equity capital of $1.4 billion. As of such date, the Savings Bank was well capitalized, under OTS regulations.

The Mortgage Subsidiary, a wholly owned, direct subsidiary of CCC, originates prime and sub-prime first and second mortgage residential home equity loans. The Mortgage Subsidiary currently has four wholly owned subsidiaries. While three of them will be merged into the Mortgage Subsidiary immediately before consummation of the proposed transaction, the Second-Tier Subsidiary will continue as a wholly owned direct subsidiary of the Mortgage Subsidiary. The Second-Tier Subsidiary's sole activity is holding a subordinated interest in a pool of securitized mortgage loans.

## The Proposed Transaction

In the proposed transaction, CCC will contribute all of the common stock of the Mortgage Subsidiary to the Savings Bank. As a result, the Mortgage Subsidiary will become a wholly owned first-tier operating subsidiary of the Savings Bank. The Mortgage Subsidiary will continue to own all the stock of the Second-Tier Subsidiary, which will become a second-tier operating subsidiary of the Savings Bank. The Operating Subsidiaries will continue their current activities after the transaction.

Order No.:  2004-23
Page: 2

**Operating Subsidiary Application**

Generally, a federal savings association may invest in an operating subsidiary only if: (1) the subsidiary engages only in activities permissible for federal associations to engage in directly; (2) the federal association owns, directly or indirectly, more than 50 percent of the voting shares of the operating subsidiary; and (3) no person or entity other than the federal association exercises operating control over the operating subsidiary.[1]  In addition, OTS may, at any time, limit a savings association's investment in operating subsidiaries, or may limit or refuse to permit any activities of an operating subsidiary, for supervisory, legal, or safety and soundness reasons.[2]

With regard to the requirement that the subsidiary may engage only in activities permissible for federal associations to engage in directly, the Mortgage Subsidiary will continue to engage in mortgage loan origination activities, which are permissible for federal savings associations.  In addition, the Second-Tier Subsidiary's sole activity will be holding a subordinated interest in a pool of securitized mortgage loans, which is permissible for federal savings associations.  Accordingly, OTS concludes that the Operating Subsidiaries' proposed activities are permissible for a federal association,

With regard to the requirement that the federal association own, directly or indirectly, more than 50 percent of the voting shares of the operating subsidiary, the application indicates that each of the Operating Subsidiaries will satisfy this requirement.  The Savings Bank will hold all of the common stock of the Mortgage Subsidiary and indirectly, through the Mortgage Subsidiary, hold all of the stock of the Second-Tier Subsidiary.  With regard to the requirement that no person or entity other than the federal association exercise operating control over the operating subsidiary, the application indicates that no other party will have operating control over the Operating Subsidiaries.

OTS has carefully considered the supervisory considerations presented by the application. Based on the application, OTS' regulatory experience with the Savings Bank and its holding companies, and the commitments provided in the application, OTS concludes that it has no supervisory objections to the proposed transaction, provided the conditions set forth below are satisfied.

**Conclusions**

Based on the considerations set forth above, OTS concludes that the application meets the applicable approval criteria, provided that the following conditions are imposed.  Accordingly, the application is hereby approved, provided that the following conditions are complied with in a manner satisfactory to the OTS Southeast Regional Director, or his designee (Regional Director):

---

[1]  12 C.F.R. § 559.2, 559.3(c)(1), and (e)(1) (2003).

[2]  12 C.F.R. § 559.1(a) (2003).

Order No.: 2004-23
Page: 3

1. **The** Savings Bank and the other parties to the transaction must receive all required regulatory approvals and submit copies of all such approvals to the Regional Director prior to consummation of the proposed transaction;

2. The proposed transaction must be consummated within six months from the date of this Order;

3. On the business day prior to the date of consummation of the proposed transaction, the chief financial officers of the Savings Bank and CCC must certify in writing to the Regional Director that no material adverse changes have occurred with respect to the financial condition or operations of the Savings Bank, the Mortgage Subsidiary, and the Second-Tier Subsidiary, as disclosed in the application. If additional information having a material adverse bearing on any feature of the application is brought to the attention of the Savings Bank, the Mortgage Subsidiary, CCC, or OTS since the date of the financial information submitted with the application, the transaction must not be consummated, unless the information is presented to the Regional Director, and the Regional Director provides written non-objection to consummation of the transaction;

4. The Savings Bank must advise the Regional Director in writing within **5** calendar days after the effective date of the proposed transaction: (a) of the effective date of the proposed transaction; and (b) that the transaction was consummated in accordance with all applicable laws and regulations, the application, and this Order; and

5. The Operating Subsidiaries must not deviate materially from any of the activities, facts, representations or commitments described in the application, except with the prior written non-objection of the Regional Director.

    Any time specified herein may be extended by the Regional Director, for good cause, for up to **120** calendar days.

    By Order of the Director of the Office of Thrift Supervision, or his designee, effective *April 30, 2004*

Scott M. Albinson
Managing Director
Office of Examinations, Supervision and
    Consumer Protection

# EXHIBIT 4



**National Information Center**
A repository of financial data and institution characteristics collected by the Federal Reserve System

FFIEC home | Federal Reserve Board home

Accessibility | Disclaimer | Privacy Policy

| NIC Home | Institution Search | FBO Search | Top 50 BHCs | BHCPR Peer Reports |
| FAQ | | | | |

## CITICORP TRUST BANK, FSB (374112) as of 04/21/2006

Hierarchy report with the following institution types: Commercial Bank, Cooperative Bank, Credit Union, Edge/Agreement Corporation, Financial Holding Company, Holding Company, Industrial Bank, Insurance Co. Broker/Agent/Underwriter, Nondepository Trust Company, Other Company, Savings Bank, Savings and Loan Association, and the Securities Broker/Dealer/Underwriter

5 Institution(s) Found.

‹ Previous    Page    1    ›    Next ›

| Seq Num | Name (RSSD ID) | Parent Seq Num | City | State / Country | Institution Type |
|---|---|---|---|---|---|
| 1 | * CITICORP TRUST BANK, FSB (374112) | | WILMINGTON | DE | Federal Savings Bank |
| 2 | –* CITIFINANCIAL MORTGAGE COMPANY, INC. (2977151) | 1 | IRVING | TX | Domestic Entity Other |
| 3 | –* ASSOCIATES HOME EQUITY RECEIVABLES CORP. (2977245) | 2 | IRVING | TX | Domestic Entity Other |
| 4 | –* CITIGROUP RESIDENTIAL MORTGAGE SECURITIES, INC. (3464760) | 1 | O'FALLON | MO | Domestic Entity Other |
| 5 | –* CITIGROUP TRUST - DELAWARE, NATIONAL ASSOCIATION (3398306) | 1 | WILMINGTON | DE | Non-deposit Trust Company - Member |

Page 1 of 1

* Institutions Matching Selection Rule
+ For purposes of Regulation Y, the top-tier reporter's ownership level in this banking organization does not meet the definition of "control"; however, the ownership level does meet the FY Y-10/10F reportability criteria as this banking relationship is regulated by the Federal Reserve.
^ Although this relationship is not governed by U.S. banking statutes, it is included because it is of interest to the Federal Reserve.

NIC Home    |    FAQ    |    Help    |    Contact Us

# EXHIBIT 5



# National Information Center

A repository of financial data and institution characteristics collected by the Federal Reserve System

FFIEC home  |  Federal Reserve Board home

Accessibility  |  Disclaimer  |  Privacy Policy

| NIC Home | Institution Search | FBO Search | Top 50 BHCs | BHCPR Peer Reports |
|---|---|---|---|---|
| FAQ | | | | |

**Institution History for**   CITIFINANCIAL MORTGAGE COMPANY, INC. (2977151)

3 institution history record(s) found.

‹ Previous  Page  1        Next ›

| Event Date | Historical Event |
|---|---|
| 2000-11-30 | ASSOCIATES HOME EQUITY SERVICES, INC. located at IRVING, TX was established as a Domestic Entity Other. |
| 2001-04-30 | ASSOCIATES HOME EQUITY SERVICES, INC. was **renamed** to CITIFINANCIAL MORTGAGE COMPANY, INC.. |
| 2006-07-01 | CITIFINANCIAL MORTGAGE COMPANY, INC. was **acquired** by CITIMORTGAGE, INC.. |

Page 1 of 1

# EXHIBIT 6

Report created: 4/3/2009

### CITIGROUP INC. (1951350)
#### as of 07/01/2006
Hierarchy report with the following institution types: Commercial Bank, Cooperative Bank, Credit Union, Edge/Agreement Corporation, Financial Holding Company, Holding Company, Industrial Bank, Insurance Co. Broker/Agent/Underwriter, Nondepository Trust Company, Other Company, Savings Bank, Savings and Loan Association, and the Securities Broker/Dealer/Underwriter

| Seq Num | Name (RSSD ID) | Parent Seq | City | State or Country | Entity Type |
|---|---|---|---|---|---|
| 1 | * CITIGROUP INC. (1951350) | | NEW YORK | NY | Financial Holding Company - Domestic |
| 2 | -* CITIGROUP BUSA HOLDINGS INC. (3375352) | 1 | NEW YORK | NY | Bank Holding Company |
| 3 | --* HOLDING BUSA II, S. DE R.L. DE C.V. (3080535) | 2 | MEXICO CITY | MEXICO | Bank Holding Company |
| 4 | ---* BANAMEX USA BANCORP (1021628) | 3 | CENTURY CITY | CA | Bank Holding Company |
| 5 | ----* CITIBANK (BANAMEX USA) (750864) | 4 | CENTURY CITY | CA | Non-member Bank |
| 6 | -----* COMMUNICO (3059326) | 5 | CENTURY CITY | CA | Domestic Entity Other |
| 7 | -* DFA INTERNATIONAL VALUE PORTFOLIO IV (DFVTEX) (3814516) | 1 | SANTA MONICA | CA | Domestic Entity Other |
| 8 | -* DFA EMERGING MARKETS PORTFOLIO II (DFETX) (3814525) | 1 | SANTA MONICA | CA | Domestic Entity Other |
| 9 | -* ADAM STATUTORY TRUST I (3349933) | 1 | HARTFORD | CT | Domestic Entity Other |
| 10 | -* ADAM STATUTORY TRUST II (3349942) | 1 | HARTFORD | CT | Domestic Entity Other |
| 11 | -* ADAM STATUTORY TRUST III (3349951) | 1 | HARTFORD | CT | Domestic Entity Other |
| 12 | -* ADAM STATUTORY TRUST IV (3349960) | 1 | HARTFORD | CT | Domestic Entity Other |
| 13 | -* ADAM STATUTORY TRUST V (3349979) | 1 | HARTFORD | CT | Domestic Entity Other |
| 14 | -* CITIGROUP FUNDING INC. (3367236) | 1 | NEW YORK | NY | Domestic Entity Other |
| 15 | --* TARGETS TRUST XXVI (3399956) | 14 | NEW YORK | NY | Domestic Entity Other |
| 16 | --* TARGETS TRUST XXV (3384297) | 14 | NEW YORK | NY | Domestic Entity Other |
| 17 | -* CITIGROUP CAPITAL IX (3185739) | 1 | NEW YORK | NY | Domestic Entity Other |
| 18 | -* CITIGROUP CAPITAL X (3242593) | 1 | NEW YORK | NY | Domestic Entity Other |
| 19 | -* CITICORP HOLDINGS INC. (3375370) | 1 | NEW YORK | NY | Bank Holding Company |
| 20 | --* CITIBANK, N.A. (476810) | 19 | NEW YORK | NY | National Bank |

* Institutions Matching Selection Rule.

+ For purposes of Regulation Y, the top-tier reporter's ownership level in this banking organization does not meet the definition of "control"; however, the ownership level does meet the FY Y-10/10F reportability criteria as this banking relationship is regulated by the Federal Reserve.

^ Although this relationship is not governed by U.S. banking statutes, it is included because it is of interest to the Federal Reserve.

Report created: 4/3/2009

CITIGROUP INC. (1951350)
as of 07/01/2006
Hierarchy report with the following institution types: Commercial Bank, Cooperative Bank, Credit Union, Edge/Agreement
Corporation, Financial Holding Company, Holding Company, Industrial Bank, Insurance Co. Broker/Agent/Underwriter,
Nondepository Trust Company, Other Company, Savings Bank, Savings and Loan Association, and the Securities
Broker/Dealer/Underwriter

| Seq Num | Name (RSSD ID) | Parent Seq | City | State or Country | Entity Type |
|---|---|---|---|---|---|
| 677 | ---* CITICORP INVESTMENT SERVICES (1662991) | 676 | LONG ISLAND CITY | NY | Securities Broker/Dealer |
| 678 | ---* CITIBANK (WEST), FSB (3119145) | 676 | SAN FRANCISCO | CA | Federal Savings Bank |
| 679 | ----* CAL FED HOLDINGS, INC. (3158498) | 678 | SAN FRANCISCO | CA | Domestic Entity Other |
| 680 | ----* FIRST ESTATE CORPORATION (3158519) | 678 | SAN FRANCISCO | CA | Domestic Entity Other |
| 681 | -----* GLENFED DEVELOPMENT CORP. (3179970) | 680 | SAN FRANCISCO | CA | Domestic Entity Other |
| 682 | ----* FRANCISCAN FINANCIAL CORPORATION (3377990) | 678 | SAN FRANCISCO | CA | Domestic Entity Other |
| 683 | -----* SAN FRANCISCO AUXILIARY CORPORATION (3383553) | 682 | SAN FRANCISCO | CA | Domestic Entity Other |
| 684 | ----* CITIMORTGAGE, INC. (3378018) | 678 | O'FALLON | MO | Domestic Entity Other |
| 685 | -----* FIRST COLLATERAL SERVICES, INC. (2032386) | 684 | CONCORD | CA | Finance Company |
| 686 | -----* CITICORP MORTGAGE SECURITIES, INC. (1190917) | 684 | NEW YORK | NY | Securities Broker/Dealer |
| 687 | -----* FIVE STAR SERVICE CORPORATION (3158555) | 684 | SAN FRANCISCO | CA | Domestic Entity Other |
| 688 | ---* CITIFINANCIAL AUTO CREDIT, INC. (3158386) | 678 | IRVING | TX | Finance Company |
| 689 | ---* VERDUGO TRUSTEE SERVICE CORPORATION (3158564) | 676 | FREDERICK | MD | Domestic Entity Other |
| 690 | ---* FNC INSURANCE AGENCY, INC. (3159196) | 676 | FREDERICK | MD | Domestic Entity Other |
| 691 | ----* CAL FED INSURANCE AGENCY, INC. (3160334) | 690 | SAN FRANCISCO | CA | Domestic Entity Other |
| 692 | ---* PRINCIPAL MORTGAGE REINSURANCE CO. (3285264) | 676 | BURLINGTON | VT | Domestic Entity Other |
| 693 | -* CITICORP BANKING CORPORATION (1045848) | 1 | NEW CASTLE | DE | Domestic Entity Other |
| 694 | --* CITIGROUP GHS HOLDINGS, INC. (3411960) | 693 | NEW YORK | NY | Domestic Entity Other |
| 695 | ---* GLOBAL HEDGE STRATEGIES, LLC (3384242) | 694 | NEW YORK | NY | Domestic Entity Other |

* Institutions Matching Selection Rule.

+ For purposes of Regulation Y, the top-tier reporter's ownership level in this banking organization does not meet the definition of "control"; however, the ownership level does meet the FY Y-10/10F reportability criteria as this banking relationship is regulated by the Federal Reserve.

^ Although this relationship is not governed by U.S. banking statutes, it is included because it is of interest to the Federal Reserve.

# EXHIBIT 7

Prospectus
June 25, 2008



Citicorp Mortgage Securities, Inc.
*(Depositor)*

CitiMortgage, Inc.
*(Sponsor)*

# Citicorp Mortgage Securities Trust, Series 2008-2 *(Issuing Entity)*

# $202,851,747 (approximate)
# Senior and Subordinated
# REMIC Pass-Through Certificates

The certificates are backed by pools of residential first-mortgage loans. The certificates represent obligations of the Issuing Entity only, and do not represent obligations of or interests in the Depositor, the Sponsor, or any of their affiliates. Principal and interest on the certificates will be distributed monthly, beginning July 25, 2008.

The Underwriter has committed to purchase all of the offered class A certificates (other than the ratio-stripped PO and IO class certificates) from the Depositor. The purchase price for the certificates purchased by the Underwriter will be set by the Underwriter or negotiated by the purchaser and the Underwriter at the time of sale. Total proceeds to the Depositor for the certificates purchased by the Underwriter will be approximately $185,625,603, plus accrued interest from June 1, 2008 to the closing date. The remaining offered certificates will be transferred by the Depositor to the Sponsor as partial consideration for the purchase of the mortgage loans. The Sponsor does not intend to list any of the certificates on a national securities exchange or the Nasdaq Stock Market.

*You should read "General risk factors" beginning on page 32 and "Series risk factors" beginning on page 9 before you purchase any certificates.*

## Citi
*(Underwriter)*

*The certificates are not insured or guaranteed by the Federal Deposit Insurance Corporation
or any other governmental agency.
Neither the Securities and Exchange Commission nor any state securities commission
has approved or disapproved of the certificates or passed upon the adequacy or accuracy of this prospectus. Any representation to the contrary is
a criminal offense.*

ecording of its assignment to the Trust, the other party to the sale, assignment, satisfaction or discharge might have rights superior to the Trust's. f the originator or CMSI acted without authority, it would be liable to the Trust or the certificate holders. If the originator or CMSI became ankrupt before the assignment to the Trust was recorded, creditors of the originator or CMSI might have rights in the mortgage loan superior to he Trust's.

### The Depositor and other affiliates of CitiMortgage

#### The Depositor, Citicorp Mortgage Securities, Inc.

CMSI, the Depositor, was incorporated in Delaware in 1987. It is not expected that CMSI will have any business operations other than offering nortgage-backed securities and related activities. CMSI is a wholly-owned subsidiary of CitiMortgage. CMSI's principal offices are at 1000 Technology Drive, O'Fallon, Missouri 63368-2240, telephone (636) 261-1313.

#### Citibank, N.A.

Citibank is a commercial bank offering a wide range of banking services to its customers in the United States and around the world. Citibank's lomestic deposits are insured by the Federal Deposit Insurance Corporation (the *FDIC*).

On October 1, 2006, Citibank (West), FSB, a wholly-owned subsidiary of Citigroup, merged into Citibank. As a result, CitiMortgage, which lad been a subsidiary of Citibank (West), FSB, became a subsidiary of Citibank.

Citibank's principal offices are at 399 Park Avenue, New York, New York 10043, telephone (212) 559-1000.

#### Citigroup Inc.

CitiMortgage, CMSI and Citibank are all wholly-owned subsidiaries of Citigroup, a publicly owned Delaware corporation. Citigroup's principal offices are at 399 Park Avenue, New York, New York 10043, telephone (212) 559-1000. Through its subsidiaries and affiliates, Citigroup is a liversified financial holding company whose businesses provide a broad range of financial services to consumer and corporate customers in over 100 countries and territories.

#### Third-party originators

The supplement identifies any persons not affiliated with CitiMortgage that originated mortgage loans with an aggregate principal balance greater han 10% of the aggregate principal balance of all the mortgage loans in the Trust. Each such third-party originator will generally be a savings and oan association, savings bank, commercial bank, credit union, insurance company, or a mortgagee approved by the Secretary of Housing and Jrban Development.

Third-party originators must be experienced in originating mortgage loans of the types in the pool in accordance with accepted practices and prudent guidelines.

### Mortgage loan underwriting

Mortgage loan underwriting assesses a prospective borrower's ability and willingness to repay, and the adequacy of the property as collateral for, a requested loan.

#### Procedures of affiliated originators

Each affiliated originator's real estate lending process for one- to four-family residential mortgage loans follows a standard procedure, established to comply with federal and state laws and regulations. For some residential mortgage loans, the affiliated originators have contracted with or delegated the underwriting process to unaffiliated third parties.

Initially, a prospective borrower must provide information about the prospective borrower, the property to be financed and the type of loan desired. The prospective borrower must also provide some or all of the following:

- proof of income, such as a paycheck stub or W-2 form, except that some self-employed prospective borrowers must submit their federal income tax returns for the most recent two years,
- if the loan is for the purchase of the mortgaged property, proof of liquid assets,
- telephone verification of employment, which may be by a third-party national employment verification service (except that some high net worth prospective borrowers with ongoing banking relationships with Citibank's private

75

# EXHIBIT 8

10-Q 1 d10q.htm FORM 10-Q FOR FEDERAL HOME LOAN BANK OF SAN FRANCISCO

<u>Table of Contents</u>

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

# FORM 10-Q

---

☒ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

#### For the quarterly period ended September 30, 2006

#### OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

#### Commission File Number: 000-51398

---

# FEDERAL HOME LOAN BANK OF SAN FRANCISCO
##### (Exact name of registrant as specified in its charter)

**Federally chartered corporation**
(State or other jurisdiction of
incorporation or organization)

**94-6000630**
(I.R.S. employer
identification number)

**600 California Street**
**San Francisco, CA**
(Address of principal executive offices)

**94108**
(Zip code)

**(415) 616-1000**
(Registrant's telephone number, including area code)

---

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing for the past 90 days.  ☒ Yes  ☐ No

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):

☐ Large accelerated filer          ☐ Accelerated filer          ☒ Non-accelerated filer

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).  ☐ Yes  ☒ No

Indicate the number of shares outstanding of each of the issuer's classes of common stock, as of the latest practicable date.

| | Shares outstanding as of October 31, 2006 |
|---|---|
| Class B Stock, par value $100 | 98,544,252 |

---

Table of Contents

**Proposed Finance Board Rule to Change the Capital Structure of the FHLBanks.** On March 15, 2006, the Finance Board published a proposed rule that would change the capital structure of the FHLBanks by requiring a minimum level of retained earnings and restricting the amount of excess stock that an FHLBank can accumulate. The comment period on the proposed rule ended on July 13, 2006. The final rule, if any, approved by the Finance Board may be different from the proposed rule. Under the proposed rule:

- Each FHLBank would be required to hold retained earnings of at least $50 million plus 1% of non-advance assets.
- Dividends would be limited to no more than 50% of net income until the FHLBank reaches its required level of retained earnings.
- Payment of any dividends thereafter would be restricted if the FHLBank's retained earnings drop below its required level.
- The FHLBank's excess capital stock would be limited to no more than 1% of total assets.
- Members would be prohibited from purchasing capital stock in excess of their minimum capital stock requirements.
- The FHLBanks would be prohibited from paying dividends to their members in stock form.

Based on management's current analysis, the Bank has determined that the proposed rule, if approved in its current form, would significantly reduce the percentage of Bank earnings available for dividends for a number of years, would require the Bank to pay dividends in the form of cash instead of stock, could have a negative effect on the Bank's ability to compete for the business of its members and ability to attract capital from members and potential members, and may have other unanticipated consequences. See "Part II. Item 1A. Risk Factors" of this Form 10-Q.

**Merger between Wachovia Corporation and Golden West Financial Corporation.** On October 1, 2006, Wachovia Corporation completed its merger with Golden West Financial Corporation (Golden West). Golden West is the holding company of World Savings Bank, FSB, the Bank's third largest borrower and stockholder as of September 30, 2006. World Savings Bank, FSB, remained a member of the Bank after the merger. It is uncertain at this time what effect, if any, the merger will have on the Bank.

**Reorganization of Citibank (West), FSB, into Citibank, N.A.,** As of September 30, 2006, Citibank (West), FSB, was the Bank's largest borrower and shareholder. Effective October 1, 2006, Citibank (West), FSB, was reorganized into Citibank, N.A., whose main office is located in Nevada. Citibank, N.A., became a member of the Bank after the reorganization became effective. Citibank, N.A., is also the Bank's primary securities custodian and a derivatives dealer counterparty. Citibank, N.A., served in these roles prior to and after the reorganization. In addition, the Bank has financial relationships with two affiliates of Citibank, N.A., They are (i) Citigroup Global Markets, Inc., which is a bond underwriter and dealer for the issuance of the FHLBank System's consolidated obligations, and (ii) Citigroup Institutional Trust Company, which is the securities custodian for securities pledged to the Bank by Citibank, N.A., and its approved subsidiaries.

**2006 Board of Directors Election Results.** On November 9, 2006, the Bank announced that the institutions eligible to vote in its California election had elected incumbent directors James P. Giraldin and D. Tad Lowrey to new terms on the Bank's Board of Directors and the institutions eligible to vote in its Nevada election had elected J. Benson Porter to a new term on the Board, each for a three-year term beginning January 1, 2007, and ending December 31, 2009. Mr. Giraldin is an officer of First Federal Bank of California, Santa Monica, California. Mr. Lowrey is an officer of Fullerton Community Bank, Fullerton, California. Mr. Porter is an officer of Washington Mutual Bank, Henderson, Nevada.

65

Table of Contents

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized on November 14, 2006.

Federal Home Loan Bank of San Francisco

/S/   STEVEN T. HONDA

Steven T. Honda
Senior Vice President and Chief Financial Officer
(Principal Financial Officer)

/S/   VERA MAYTUM

Vera Maytum
Senior Vice President and Controller
(Chief Accounting Officer)

71

# EXHIBIT 9

Report created: 3/20/2009

CITIBANK, N.A. (476810)
as of 10/01/2006
Hierarchy report with the following institution types: Commercial Bank, Cooperative Bank, Credit Union, Edge/Agreement
Corporation, Financial Holding Company, Holding Company, Industrial Bank, Insurance Co. Broker/Agent/Underwriter,
Nondepository Trust Company, Other Company, Savings Bank, Savings and Loan Association, and the Securities
Broker/Dealer/Underwriter

| Seq Num | Name (RSSD ID) | Parent Seq | City | State or Country | Entity Type |
|---|---|---|---|---|---|
| 1 | * CITIBANK, N.A. (476810) | | LAS VEGAS | NV | National Bank |
| 2 | –* CITICORP LEASING, INC. (1042409) | 1 | HARRISON | NY | Domestic Entity Other |
| 3 | –-* ADV THREE, INC. (1146857) | 2 | NEW CASTLE | DE | Domestic Entity Other |
| 4 | –* FAB HOLDINGS LP, LLC (3349876) | 1 | WILMINGTON | DE | Domestic Entity Other |
| 5 | –-* + FAB FINANCIAL, LP (3349867) | 4 | BRYAN | TX | Domestic Entity Other |
| 6 | –* LOAN FUNDING VI LLC (3268221) | 1 | NEW YORK | NY | Finance Company |
| 7 | –* LOAN FUNDING VII LLC (3268230) | 1 | NEW YORK | NY | Finance Company |
| 8 | –* SOL LOAN FUNDING LLC (3271801) | 1 | NEW YORK | NY | Finance Company |
| 9 | –* LOAN FUNDING IX LLC (3284856) | 1 | NEW YORK | NY | Finance Company |
| 10 | –* LOAN FUNDING IV LLC (3224272) | 1 | NEW YORK | NY | Finance Company |
| 11 | –* ECL FUNDING LLC (3234851) | 1 | NEW YORK | NY | Finance Company |
| 12 | –* SIL LOAN FUNDING LLC (3234879) | 1 | NEW YORK | NY | Finance Company |
| 13 | –* COLLISTER LOFT FINANCE LLC (3235335) | 1 | NEW CASTLE | DE | Finance Company |
| 14 | –* KIL LOAN FUNDING LLC (3253816) | 1 | NEW YORK | NY | Finance Company |
| 15 | –* CDL LOAN FUNDING LLC (3260225) | 1 | NEW YORK | NY | Finance Company |
| 16 | –* SB PLANO CORPORATION (3349885) | 1 | BRYAN | TX | Domestic Entity Other |
| 17 | –* + CITIBANK KOREA INC. (1175624) | 1 | SEOUL | KOREA, SOUTH | International Bank of U.S. Depository - Edge or Trust Co. |
| 18 | –* CITIBANK MAGHREB (1171877) | 1 | CASABLANCA | MOROCCO (OTHER) | International Nonbank Sub of Domestic Entities |
| 19 | –* BANCO DE HONDURAS S.A. (1171907) | 1 | TEGUCIGALPA | HONDURAS | International Nonbank Sub of Domestic Entities |
| 20 | –* CITIGROUP (CONGO) S.A.R.L. (1173022) | 1 | KINSHASA | CONGO (KINSHASA) | International Nonbank Sub of Domestic Entities |

* Institutions Matching Selection Rule.

+ For purposes of Regulation Y, the top-tier reporter's ownership level in this banking organization does not meet the definition of "control"; however, the ownership level does meet the FY Y-10/10F reportability criteria as this banking relationship is regulated by the Federal Reserve.

^ Although this relationship is not governed by U.S. banking statutes, it is included because it is of interest to the Federal Reserve.

Report created: 3/20/2009

<u>CITIBANK, N.A. (476810)</u>
as of 10/01/2006
Hierarchy report with the following institution types: Commercial Bank, Cooperative Bank, Credit Union, Edge/Agreement
Corporation, Financial Holding Company, Holding Company, Industrial Bank, Insurance Co. Broker/Agent/Underwriter,
Nondepository Trust Company, Other Company, Savings Bank, Savings and Loan Association, and the Securities
Broker/Dealer/Underwriter

| Seq Num | Name (RSSD ID) | Parent Seq | City | State or Country | Entity Type |
|---|---|---|---|---|---|
| 21 | -* CITIBANK NOMINEES (IRELAND) LIMITED (1173787) | 1 | DUBLIN | IRELAND | International Nonbank Sub of Domestic Entities |
| 22 | -* CITIBANK ZAMBIA LIMITED (1174524) | 1 | LUSAKA | ZAMBIA | International Nonbank Sub of Domestic Entities |
| 23 | -* CITITRUST LIMITED (1183759) | 1 | CENTRAL | HONG KONG | International Nonbank Sub of Domestic Entities |
| 24 | -* CITI SQUARE BUILDING CORPORATION (3690185) | 1 | QUEZON CITY | PHILIPPINES | International Nonbank Sub of Domestic Entities |
| 25 | -* CITIBANK AGENCIA DE VALORES S.A. (3015407) | 1 | SANTIAGO | CHILE | International Nonbank Sub of Domestic Entities |
| 26 | -* CITIBANK DEL PERU S.A. (3270000) | 1 | LIMA | PERU | International Nonbank Sub of Domestic Entities |
| 27 | -* CITIBANK DOMESTIC INVESTMENT CORP. (3487321) | 1 | NEW CASTLE | DE | Domestic Entity Other |
| 28 | --* CITIMORTGAGE, INC. (3378018) | 27 | O'FALLON | MO | Domestic Entity Other |
| 29 | ---* CITIMORTGAGE ASSET MANAGEMENT, INC. (1382150) | 28 | GARDEN CITY | NY | Domestic Entity Other |
| 30 | ---* FIVE STAR SERVICE CORPORATION (3158555) | 28 | SAN FRANCISCO | CA | Domestic Entity Other |
| 31 | ---* FIRST COLLATERAL SERVICES, INC. (2032386) | 28 | CONCORD | CA | Finance Company |
| 32 | ---* CITICORP MORTGAGE SECURITIES, INC. (1190917) | 28 | NEW YORK | NY | Securities Broker/Dealer |
| 33 | --* CITIMORTGAGE HOLDINGS, INC. (3487330) | 27 | IRVING | TX | Domestic Entity Other |
| 34 | -* CITIBANK COTE D' IVOIRE S.A. (3345597) | 1 | ABIDJAN | IVORY COAST | International Nonbank Sub of Domestic Entities |
| 35 | -* CITIBANK SENEGAL S.A. (3472635) | 1 | DAKAR | SENEGAL | International Nonbank Sub of Domestic Entities |

* Institutions Matching Selection Rule.

+ For purposes of Regulation Y, the top-tier reporter's ownership level in this banking organization does not meet the definition of "control"; however, the ownership level does meet the FY Y-10/10F reportability criteria as this banking relationship is regulated by the Federal Reserve.

^ Although this relationship is not governed by U.S. banking statutes, it is included because it is of interest to the Federal Reserve.