IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MICHAEL AND LYNN OGBIN,
      Plaintiffs,

    v.

CITIFINANCIAL MORTAGE
COMPANY, INC.,
      Defendant.

CIVIL NO. 09-0023(NLH)(JS)

**OPINION**

**APPEARANCES:**

Lewis G. Adler
Roger C. Mattson
Law Office of Lewis Adler
26 Newton Avenue
Woodbury, NJ 08096

    *Attorneys for plaintiff*

Marc C. Singer
John Herbert Noorlander
Vincent Frank Papalia
Saiber, LLC
18 Columbia Turnpike
Suite 200
Florham Park, NJ 07932

Lucia Nale
Maritoni Kane
Miriam R. Nemetz
Richard P. Caldarone
Mayer Brown LLP
Chicago and Washington DC

    *Attorneys for defendant*

**HILLMAN**, District Judge

    This is the third putative class action case--one of about a dozen similar actions filed in this District by plaintiffs' counsel--that this Court has addressed concerning a plaintiff's

claims that a defendant charged excessive attorney's fees and costs in a state court foreclosure action.  Defendant has moved to dismiss plaintiffs' claims for failure to state a claim.  For the reasons expressed below, defendant's motion will be granted.

## BACKGROUND

These are the facts alleged in plaintiffs' complaint:  On January 11, 1995, plaintiffs Michael and Lynn Ogbin signed a note and mortgage with Ford Consumer Finance Company, predecessor of defendant CitiMortgage, Inc.[1], on which they subsequently defaulted.  On May 15, 2003, defendant instituted a foreclosure action against plaintiffs.[2]  Sometime thereafter, plaintiffs requested a reinstatement and modification from defendant, which defendant provided.  Plaintiffs and defendant entered into the loan modification agreement on April 21, 2006.  The agreement modified the original January 1995 mortgage note.  In the agreement, "the Defendant demanded attorney's fees and costs from the Plaintiffs in the amount of $5,147.00."[3]  (Compl. ¶ 17.)  On or about May 22,

_____

[1]CitiFinancial Mortgage Co, Inc. is the named defendant. CitiMortgage, Inc., however, acquired that entity on July 1, 2006.

[2]The complaint does not indicate in which court defendant instituted the foreclosure action.  The Court's independent review of the public court docket reveals that the foreclosure action was filed in New Jersey Superior Court, Chancery Division, Gloucester County, Civil Action No. F-9555-03.

[3]Plaintiffs claim in their complaint that the agreement demanded $5,147.00 in fees and costs.  The fees and costs in the agreement total $5,148.30.  Apparently, plaintiffs do not contest

2

2007, the loan was paid in full and the mortgage loan was discharged.

Plaintiffs now claim that defendant's demand for fees and costs violated New Jersey common law (breach of contract, negligence, breach of the duty of good faith and fair dealing, unjust enrichment), statute (Consumer Fraud Act, Fair Foreclosure Act, Truth-in-Consumer Contract and Warranty and Notice Act, Licensed Lenders Act), and court rules.  Plaintiffs purport to bring these claims on their behalf and on behalf of similarly situated individuals who have also paid these allegedly violative fees.[4]  Defendant has moved to dismiss plaintiffs' claims on several bases.  Plaintiffs have opposed defendant's motion.

## DISCUSSION

A.   Jurisdiction

Plaintiffs assert that this Court has jurisdiction over this

---

$1.30 of the fees and costs.

[4]Counsel for plaintiffs has brought essentially identical claims on behalf of numerous other state court foreclosure defendants against other mortgage lending companies, including two other cases before this Court--Coleman v. Chase, Civ. A. No. 08-2215 (dismissed on November 10, 2009), and Oliver v. American Home Mortgage Servicing, Inc., Civ. A. No. 09-0001.  As recently noted by Judge Irenas in Rivera v. Washington Mut. Bank, Civ. A. No. 09-0021, 637 F. Supp. 2d 256, 258 (D.N.J. 2009), "the Court has had particular difficulty ascertaining the alleged facts of this case.  No doubt this difficulty stems from the obvious fact that Plaintiffs' counsel has drafted one generic complaint for at least ten other cases--all filed in this district by the same attorneys, all proposing the same class, seven of which were filed on the same day as this case."

3

matter pursuant to 28 U.S.C. § 1332(d)(2), the Class Action
Fairness Act (CAFA).

**B.  Analysis**

Defendant has moved to dismiss all claims in plaintiffs'
complaint on several bases, but primarily on the basis that
plaintiffs have failed to meet the basic pleading requirements of
Federal Civil Procedure Rules 8(a).[5]  The Court agrees.

The entirety of plaintiffs' complaint is: (1) they entered
into a mortgage with defendant; (2) they defaulted on that
mortgage; (3) defendant instituted foreclosure proceedings; (4)
plaintiffs requested a loan modification agreement; (5) defendant
drafted a loan modification agreement; (6) the agreement contained
an accounting for $5,147.00 in fees and costs owed to defendant as
a result of plaintiffs' default of the original note; (7)
plaintiffs voluntarily signed the loan modification agreement and
agreed to its terms, including the itemization of the fees and
costs; (8) a year later, the loan was discharged.

As noted above, based on these facts, plaintiffs claim that
defendant's demand for approximately $5,150 in fees and costs
constituted breach of contract, negligence, breach of the duty of
good faith and fair dealing, and unjust enrichment, and violated

---

[5]Defendant also moves to dismiss plaintiffs' claims on the
basis that plaintiffs have not met the Rule 9(b) standard for
pleading fraud claims.  Because the standard for pleading fraud
claims is higher than for other claims, the Court does not need
to address that argument.

the Consumer Fraud Act, Fair Foreclosure Act, Truth-in-Consumer Contract and Warranty and Notice Act (TCCWNA), Licensed Lenders Act and New Jersey court rules.  There are numerous substantive deficiencies with these claims[6], but superceding all other problems is the fact that plaintiffs never claim that they paid the requested fees and costs.  Further, even if they amended their complaint to claim that they did pay those fees and costs, plaintiffs voluntarily contracted to pay the amount.[7]  Morever, even if it can be held that the act of demanding violative fees and costs is itself a cause of action,[8] plaintiffs never specifically articulate how the $5,147.00 sum is violative of any law.

------------------------------------------------------------

[6]Judge Irenas substantively considered--and dismissed--the same claims advanced here in Rivera v. Washington Mut. Bank, Civ. A. No. 09-0021, 637 F. Supp. 2d 256 (D.N.J. 2009), Martino v. Everhome Mortg., Civ. A. No. 09-0011, 639 F. Supp. 2d 484 (D.N.J. 2009), Skypala v. Mortgage Electronic Registration Systems, Inc., Civ. A. No. 08-5867, 2009 WL 2762247 (D.N.J. Sept. 1, 2009), and Perkins v. Washington Mut., FSB, 2009 WL 2835781 (D.N.J. Sept. 4, 2009).  If the Court were to consider the substantive validity of plaintiffs' claims, the Court would be inclined to follow the reasoning of Judge Irenas.

[7]Plaintiffs requested to file a sur-reply discussing a recent New Jersey Superior Court Appellate Division case with regard to their TCCWNA claim.  See United Consumer Financial Services Company v. Carbo, --- A.2d ---, 2009 WL 3378667 (N.J. Super. Ct. App. Div. Oct. 22, 2009).  The Court denied plaintiff's request because it is inapposite to plaintiffs' claims.

[8]See, e.g., Bosland v. Warnock Dodge, Inc., 933 A.2d 942 (N.J. Super. App. Div. 2007) (holding that the act of offering a consumer contract the violates a legal right of a consumer under state law is sufficient to establish a violation of the TTCWNA).  The Court makes no finding on whether the loan modification agreement is a consumer contract.

5

Plaintiffs respond that defendant's motion is premature because discovery needs to be undertaken in order to determine how the $5,147.00 figure was calculated by defendant.  Once plaintiffs obtain that information, they will be able to explain how the costs and fees are impermissible.

Plaintiffs' view of the proper pleading standards has been renounced by the Supreme Court.  Discovery cannot serve as a fishing expedition through which plaintiffs search for evidence to support facts they have not yet pleaded.  See Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Supreme Court in Twombly/Iqbal, the Third Circuit has instructed a two-part analysis to determine whether a complaint is sufficiently pleaded.  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient

6

to show that the plaintiff has a "'plausible claim for relief.'"
Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more
than allege the plaintiff's entitlement to relief.  Id.; see also
Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)
(stating that the "Supreme Court's Twombly formulation of the
pleading standard can be summed up thus: 'stating . . . a claim
requires a complaint with enough factual matter (taken as true) to
suggest' the required element.  This 'does not impose a probability
requirement at the pleading stage,' but instead 'simply calls for
enough facts to raise a reasonable expectation that discovery will
reveal evidence of' the necessary element").  Further, a court need
not credit either "bald assertions" or "legal conclusions" in a
complaint when deciding a motion to dismiss.  In re Burlington Coat
Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).

     Taking as true all of plaintiffs' facts--that they contracted
to pay certain fees and costs associated with their mortgage
foreclosure and modification of the loan agreement, and that
defendant demanded $5,147.00 in fees and costs--what remains of
plaintiffs' allegations are legal conclusions that defendant
violated various laws.  Simply pleading that they contracted to pay
a certain amount demanded by defendant is insufficient to state any
claim.

     Plaintiffs try to redeem their pleading by explaining in their
opposition brief that New Jersey court rules limit the amount of

attorney's fees and costs, and explaining what the proper charges are.  Plaintiffs, however, cannot amend their complaint in opposition to a motion to dismiss.  Rather, the mechanism for curing pleading deficiencies is to file an amended complaint, or formal motion for leave to amend if an amended complaint has already been filed, pursuant to Fed. R. Civ. P. 15(a).  See Ranke v. Sanofi-Synthelabo, Inc., 436 F.3d 197, 206 (3d Cir. 2006)(upholding the district court's dismissal of plaintiffs' complaint because plaintiffs did not file a formal motion for leave to amend and stating that if plaintiffs "had been in possession of facts that would have augmented their complaint and possibly avoided dismissal, they should have pled those facts in the first instance").

Moreover, even if plaintiffs were allowed discovery, and then amended their complaint to cure all the deficiencies, their claims would be barred by New Jersey's entire controversy doctrine.  This Court recently dismissed essentially identical claims in Coleman v. Chase, Civ. A. No. 08-2215 (NLH/JS) and Oliver v. American Home Mortgage Servicing, Inc., Civ. A. No. 09-0001 (NLH/JS) pursuant to the doctrine, and as an additional basis for dismissing plaintiffs' complaint, the Court will do the same in this case.

As described in the Coleman and Oliver Opinions, the fundamental principle of New Jersey's entire controversy doctrine,

codified in Rule 4:30A of the New Jersey Rules of Civil Procedure[9]
and applicable in federal court, <u>Bennun v. Rutgers State
University</u>, 941 F.2d 154, 163 (3d Cir. 1991), is that "the
adjudication of a legal controversy should occur in one litigation
in only one court," and "is a reflection of the constitutional
unification of the state courts and the comprehensive jurisdiction
vested in the Superior Court established under our Constitution,
which recognized the value in resolving related claims in one
adjudication so that 'all matters in controversy between parties
may be completely determined.'" <u>Mystic Isle Development Corp. v.
Perskie & Nehmad</u>, 662 A.2d 523, 529 (N.J. 1995) (quoting N.J.
Const., art. VI, § 3, ¶ 4).

     The entire controversy doctrine serves three fundamental
purposes: "(1) the need for complete and final disposition through
the avoidance of piecemeal decisions; (2) fairness to parties to
the action and those with a material interest in the action; and
(3) efficiency and the avoidance of waste and the reduction of
delay." <u>DiTrolio v. Antiles</u>, 662 A.2d 494, 502 (N.J. 1995).  It is
meant to constrain a plaintiff from "withhold[ing] part of a
controversy for separate litigation even when the withheld
component is a separate and independently cognizable cause of

---

     [9]Rule 4:30A of the New Jersey Rules of Civil Procedure,
provides that "[n]on-joinder of claims required to be joined by
the entire controversy doctrine shall result in the preclusion of
omitted claims to the extent required by the entire controversy
doctrine . . . ." N.J. Ct. R. 4:30A.

9

action." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999).

In determining whether successive claims constitute one controversy for purposes of the doctrine, the central consideration is whether the claims "ar[o]se from related facts or the same transaction or series of transactions" as the state court claims. Fields v. Thompson Printing Co., 363 F.3d 259, 265 (3d Cir. 2004). (quoting DiTrolio, 662 A.2d at 502 (1995)). The Supreme Court of New Jersey has explained that it is a "commonality of facts, rather than commonality of issues, parties or remedies that defines the scope of the controversy." DiTrolio, 662 A.2d at 503. It is the knowledge of the existence of a cause of action during the first proceeding that invokes the entire controversy doctrine. Maertin v. Armstrong World Industries, Inc., 241 F. Supp. 2d 434, 456 (D.N.J. 2002) (citing New Jersey state court cases). The party has such knowledge if she "knows, or should have known, of facts which establish that an injury has occurred and that fault for that injury can be attributed to another." Id. (citation omitted); Brown v. Brown, 506 A.2d 29, 30 (N.J. Super. Ct. App. Div. 1986) (concluding that "the entire controversy doctrine ordinarily requires joinder or attempted joinder of constituent causes arising *pendente lite*").

The "boundaries of the doctrine are not limitless," however. Mystic Isle, 662 A.2d at 529. It is well recognized that the

entire controversy doctrine does not bar related claims which have not arisen or accrued during the pendency of the original action. McNally v. Providence Washington Ins. Co., 698 A.2d 543 (N.J. Super. Ct. App. Div. 1997).  Further, it is an equitable doctrine, and its application is flexible, with a case-by-case appreciation for fairness to the parties.  Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999).

The entire controversy doctrine is applicable in the foreclosure context.  See In re Mullarkey, 536 F.3d 215, 228 (3d Cir. 2008) (citing to Leisure Technology-Northeast v. Klingbeil Holding Co., 349 A.2d 96 (N.J. 1975) and stating that the case "reiterates the importance of the entire controversy doctrine and confirms that it is applicable to foreclosure proceedings").  New Jersey Court Rule 4:64-5, which governs the joinder of claims in foreclosure, somewhat narrows the scope of the doctrine, however. Id.  That rule provides,

> Unless the court otherwise orders on notice and for good cause shown, claims for foreclosure of mortgages shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt. Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane claims shall include, but not be limited to, claims on the instrument of obligation evidencing the mortgage debt, assumption agreements and guarantees. . . . .

N.J. Ct. R. 4:64-5.  Thus, the entire controversy doctrine applies to foreclosure proceedings, but extends only to "germane"

11

counterclaims.  In re Mullarkey, 536 F.3d at 228 (citing Leisure Tech., 349 A.2d at 98-99).

Here, just like in Coleman and Oliver, plaintiffs' claims are barred by the entire controversy doctrine.  Plaintiffs claim that during the pendency of their foreclosure action, which commenced in May 2003, defendant demanded in the loan modification agreement fees and costs violative of the law and court rules.  Instead of bringing defendant's alleged violations, which were germane to their foreclosure action, before the chancery judge at that time (April 2006), plaintiffs waited to bring a separate cause of action here (on January 2, 2009) after they voluntarily entered into the loan modification agreement, and after the foreclosure action was dismissed by defendant on June 4, 2007.  This is improper and violative of the entire controversy doctrine.

## CONCLUSION

For the reasons expressed above, defendant's motion to dismiss will be granted.  An appropriate order will be entered.


Date: November 19, 2009                    s/ Noel L. Hillman

At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.